## KUBIK v. UNITED STATES (two cases).

### Nos. 9183, 9184.

Circuit Court of Appeals, Eighth Circuit. Nov. 17, 1931.

Rehearing Denied Dec. 28, 1931.

Eugene D. O'Sullivan, of Omaha, Neb. (Charles J. Southard and J. R. Lones, both of Omaha, Neb., on the brief), for appellants.

Edson Smith, Asst. U. S. Atty., of Omaha, Neb. (Charles E. Sandall, U. S. Atty., and Ambrose C. Epperson, Asst. U. S. Atty., both of Omaha, Neb., Robert Van Pelt, Asst. U. S. Atty., of Lincoln, Neb., and Lawrence I. Shaw, Asst. U. S. Atty., of Omaha, Neb., on the brief), for the United States.

Before STONE and VAN VALKENBURGH, Circuit Judges, and SANBORN, District Judge.

STONE, Circuit Judge.

John Kubik, George Kubik, and John Repo were jointly indicted for violations of the National Prohibition Act (27 USCA). The indictment was in five counts. The first count charged a sale of two quarts of spiked beer at a soft drink parlor located at 4410 South Twenty-Seventh street, Omaha, about 10 A. M., October 4, 1929; the second count charged a sale, at the same time and place, of two drinks of whisky; the third count charged sales, at the same place and on the same date at about 1 o'clock p. m., of one gallon of alcohol and two drinks of whisky; the fourth count charged possession of six quarts of beer at 4402–4 South Twenty-Seventh street, Omaha, on October

9, 1929; the fifth count charged maintenance of a nuisance at 4410 South Twenty-Seventh street, Omaha, on October 4th. The court directed a verdict of not guilty as to the fourth count, and the jury found all of the defendants not guilty on the fifth count and guilty on the first, second, and third counts. From the above convictions on counts 1, 2, and 3, John Kubik and George Kubik bring these appeals.

Eight assignments of error are argued here. Seven of these relate to the exclusion or admission of evidence, and one has to do with a comment upon evidence made by the court in the course of the trial.

Three of the above assignments may be considered together. In connection with the evidence as to the sale of the gallon of alcohol, covered by the third count of the indictment, the evidence for the prosecution was to the effect that two of the prohibition agents had gone to 4402 or 4404 South Twenty-Seventh street (a grocery store operated by George Kubik) in the afternoon of October 4, 1929, and had asked him where they could get hold of a gallon of alcohol. They were told by him to go over to the soft drink parlor and see John, who would fix them up. They went over there and, after telling John Kubik what they wanted, he said something to John Repo, which they did not hear, and the latter walked out of the back door of the soft drink parlor and went outside. In a few minutes he returned and said to John Kubik that "it will be here pretty soon." As Repo came back from the outside, one of the agents stepped into a toilet at the rear of the bar and looked out of a window therein toward the rear of the grocery store, when he saw a door of that building open and a boy coming therefrom toward the rear of the soft drink parlor. When the agent returned to the room, the boy was there and handed Repo a package which he laid on the bar and John Kubik handed it to one of the agents. This package contained the alcohol. The three assignments have to do with the ability of the agent to see from the toilet window a door at the rear of the grocery store. Two of the assignments are the refusal to admit in evidence two photographs claimed to have been taken from the toilet window and the other assignment has to do with the comment of the court upon the offer of these photographs. In this connection, the appellants offered three photographs identified as Defendant's Exhibits 1, 2, and 3. The evidence of the photographer was that Ex-

hibits 1 and 3 were taken from the toilet window and Exhibit 2 was taken from an alley showing the walk to the rear of the grocery store. When the photographs were offered, the prosecution objected to all of them "as being irrelevant and immaterial," whereupon occurred the following:

"The Court: It seems to me they are irrelevant and immaterial. Whether a man looking out of that window can see that door is dependent upon the angle and the relation of the window to the door, as a matter of angles and distances, but to put a camera in there is the most confusing way in the world to get at the facts. I take it that the only issue that you want to explain by this is, that looking out of that window you cannot see the door?

"Mr. Lones: That is true.

"The Court: That altogether depends on the matter of angles, that [what] angle the door is away from the window and what relation the walls have in the way of interference, and that is a matter of diagramming by angles but to take pictures by a camera leads to nothing on earth but confusion. Of course, if you once had the angles diagrammed you might add the photograph as confirming the impossibility of seeing it, but you don't gain anything by using a photograph taken under those conditions, that I can see. If there is a wall between the point of vision in the window and the door, that appears to be absolutely incontrovertible as a matter of mathematical demonstration by the line of the wall of interference and the angle from which the observation must be taken. That is a matter of mathematical demonstration, whereas photographs are confusing. I sustain the objection.

"Mr. Lones: As to Exhibits 1 and 3 that objection might apply, but as to Defendants' Exhibit Number 2, it would not apply.

"The Court: You claim that particular photograph shows the location of the door in the building?

"Mr. Lones: Yes, it shows the door right here, right beyond the obstruction here.

"The Court: In that view the photograph would be material. I will overrule the objection as to the photograph. It may be received. But as to Defendants' Exhibits 1 and 3 I will sustain the objection."

While it would have been harmless to admit these two rejected exhibits, it is difficult to see how any real prejudice could result from their exclusion. The only charge in the indictment at which this evidence was

aimed was the sale of a gallon of alcohol in the soft drink parlor located at 4410 South Twenty-Seventh street. The unimportance of whether the agent could see this door is revealed by his testimony in that regard, the substance of which is as follows: "I was looking over towards the store at the corner and I saw a door fly open from the building. that is, the door facing west on that building, and a boy about ten or twelve years old was coming along after the door slammed shut on a sort of a sidewalk leading in the rear of that building toward the building where I was."

If it had been conclusively shown that the agent could not have seen the door open, yet, it would be a contradiction upon a trivial matter. Also the appellants introduced evidence to the effect that the door could not be seen from the toilet. Thus, this evidence excluded was merely cumulative upon a trivial matter. The comment of the court was in no sense prejudicial, and was virtually conceded at the time by counsel to be justified. There is no merit in these assignments.

■ Another assignment is that the court committed error in permitting the prosecution to introduce and read an information in its entirety covering a first offense. All of the counts of the indictment except the fifth (nuisance) count charged the sales and possession to be a second offense on the part of John Kubik, alleging that on June 1, 1927, he had been convicted under an information charging him with sale and possession of alcohol and identifying the information, the plea and judgment thereon. In the course of the government's case, the court permitted the reading of the information of the prior offense over the objection that it was "incompetent, irrelevant, immaterial and no proper foundation laid, and no proper identification made." The argument here is that, while the government had the right to prove the ultimate facts pleaded in the indictment and made the basis of the alleged first offense, it had no right to offer the entire information in evidence and read its details to the jury. Without an admission on the part of this appellant of the prior offense, it is difficult to see how the exact nature of that offense could be shown so accurately as by reading the actual information itself. It was a necessary part of that phase of this indictment to show the character of the prior offense, and there can be no error in presenting the information in full that the jury may accurately know what the prior charge was. While it does

not affect the admissibility of this evidence, it is not out of place to state that the court, in his charge, clearly defined the purpose and office of all of the evidence concerning the prior offense.

■ Another assignment, related to that just before discussed, is the claimed error in permitting one of the witnesses for the prosecution to answer the question concerning John Kubik: "And does he use an alias at times?" The objection to this question was that it called "for a conclusion." The obvious purpose of this question was to fully identify John Kubik as the person who had suffered the prior penalty. Before this testimony was offered, there had been introduced, without objection, the testimony of the clerk of the court, who had identified the information in the prior prosecution and the records of the court journal recording the plea and judgment therein, in connection with which he testified that these records showed a criminal proceeding against John Kubik with "an alias, John Gogola." It was in the beginning of the testimony of the next witness following the clerk where this evidence relating to identification occurred. It was, of course, necessary to identify the John Kubik then under trial with the person who had suffered the prior conviction. This testimony was proper for that purpose. In addition, it may be said that the objection as made was insufficient as the question called for the statement of a fact and not, in a legal sense, a conclusion. The argument here is that to permit evidence of the use of an alias was prejudicial as suggesting criminality. It may be true that the use of an alias suggests criminality, but so does the accusation of a prior offense, and if, in the proof of that prior offense, it is necessary or proper to show the use of an alias, there can be no valid objection to such procedure. In fact, the information and the journal entries of the plea and judgment in the prior conviction show the designation of the accused therein as "John Kubik, alias John Gogola."

■ Another assignment relates to the refusal of the court to strike out certain evidence by one of the prohibition agents. In response to a question to relate the facts surrounding the seeing of George Kubik on October 4, 1929, the agent answered: "At about 10 a. m., agent Irwin and myself, we went to the soft drink parlor conducted by Mr. John Kubik or George Kubik—" The motion to strike out was "as being a conclusion of the witness." Leaving out of

consideration the possible insufficiency of the objection and the competency of this testimony as to the ownership of the soft drink parlor, no possible prejudice could have resulted, as John Kubik, in his testimony, admitted the ownership.

■ Another assignment is to the admission of evidence of one of the agents relating to a signal passing from George Kubik to Repo at the time of the sale of the spiked beer under count 1 of the indictment. In relating the circumstances of this purchase, the agent said: "Agent Irwin and myself were standing in front of the bar and Mr. Repo hesitated about serving us with some spiked beer. Mr. George Kubik was in back of us and Mr. Repo looked at George and all at once he smiled and went and got the spiked beer for us. I didn't see the signal pass between them."

A motion was made to strike out the last sentence "as assuming something that he does not know, assuming something not in evidence." It may be fairly said that this sentence does assume that a signal passed from George Kubik to Repo, but no possible prejudice could have resulted from this assumption, as the entire situation in connection therewith was shown in detail by the witness, and the jury could not possibly have misunderstood or have received any other impression than that the above statement was purely an assumption based upon what the witness had immediately before detailed. The agent clearly stated that he saw no signal pass.

■ The final assignment has to do with the admission of certain testimony of agent Irwin. When the agents first visited the soft drink place on October 4th, Irwin asked for beer, and when Repo (who was tending the bar) asked when they had been there before, Irwin said they had never been there before, but that "Ocie from the Great Western Commission Company had sent us over there to get something to drink," and he said, "Oh, yes, Ocie sent you over," after which he sold them the "spiked" beer. When the agents went, that afternoon, to the grocery store and told George Kubik they wanted a gallon of alcohol, he said: "You are the boys Ocie went [sent] over this morning aren't you and we said yes." When they went from the grocery over to the soft drink place, John Kubik admitted them saying: "You are the boys Ocie sent around and we said yes." On cross-examination, Irwin testified: "I know John [Kubik] did not get a call from Ocie because I never saw Ocie, I don't know who he is." On redirect, he was asked: "Now, just where did you get hold of the name of this Ocie?" To this he answered: "Why, I don't remember just where it was. Someone around the office said if we would go down there that he would be a good reference to use in that place." This was objected to as "hearsay," and the refusal to strike out the answer is the error here claimed. Defendants introduced a witness (J. O. Alsworth) who testified his firm was "the Great Western," that he did not know the prohibition agents and that "in my business association I have a man by the name of Ocie," and also that he (the witness) knew the defendants Kubik. John Repo (the third defendant), a witness for defendants, testified that the agents upon the first visit "said that Ocie sent them down," and, on cross-examination, "they gave me a card by the name of Ocie."

Counsel admits that it was proper to show that the agents told the Kubiks that Ocie had sent them over, but that it was improper to show "how they happened to use this reference when it originated in the office of the Federal Prohibition Agents. If the person named had actually been responsible for these agents going over to the place they could not have given testimony to that effect because it would be hearsay in that it related to a conversation not had in the presence and hearing of the defendants. Just why it would be competent evidence when the idea originated in the office of the Federal Prohibition Agents is beyond our comprehension." Of course, it does not make the slightest difference where the agents got the idea of using this name "Ocie" for the purpose of lulling possible suspicions of the defendants. The contention is frivolous.

The judgments are affirmed, and the mandate will issue forthwith.