**Felix WILLIAMS, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**Nos. 14941–14943.**

United States Court of Appeals
Eighth Circuit.

Nov. 12, 1954.

530

E. C. Mogren, St. Paul, Minn., for appellant.

Clifford Janes, Asst. U. S. Atty., St. Paul, Minn. (George E. MacKinnon, U. S. Atty., Minneapolis, Minn., was with him on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and VOGEL, Circuit Judges.

WOODROUGH, Circuit Judge.

Defendant Felix Williams was tried and convicted on three indictments charging twenty-one violations of the narcotics laws, 21 U.S.C.A. § 174, and 26 U.S.C.A. §§ 2553(a) and 2557(a). The three cases were consolidated for trial in the court below and on appeal to this court. After the jury returned a verdict of guilty on all counts the trial court sentenced defendant to three years imprisonment, said sentence to serve as a "single general sentence" under the three indictments.

On this appeal the defendant does not challenge the form or sufficiency of the indictments, the sufficiency of the evidence to sustain the verdicts, nor the instructions of the court to the jury.[1] He does not claim that anything offered in his defense was erroneously excluded. The only error assigned is that the defendant did not receive a fair trial. It is urged that (a) the unfairness of government witnesses, the court and counsel, and (b) errors committed during the trial, deprived defendant of his constitutional guarantee of a fair and impartial trial.

■ (a). At the beginning of the trial the court, on motion of the government, dismissed six counts of one indictment charging defendant with sales of narcotics to two persons, Wilson and Stone. These men were known drug addicts and were serving prison sentences

1. The record does not contain the instructions as required by our Rule 10(b).

connected with their addiction at the time of this trial. Defendant says he knew these men would deny that he had ever sold them drugs, as charged in the dismissed counts of the indictment, and therefore his defense was weakened because he had to call Wilson and Stone as his own witnesses all the time knowing that their testimony would be questioned. Defendant cites no authority, and we have found none, to sustain his position that the dismissal of the six counts constituted error. We observe no prejudice to any of defendant's rights resulting from the dismissal of these counts.

▮ Defendant refers to several instances during the trial wherein he charges the conduct of the prosecuting attorney was unfair and prejudicial. He cites the following as an example of government counsel misstating the evidence:

"A. [by defendant]: No, it's not complete, I been to the reformatory when I was a kid, how could I hide that?

"Mr. Mogren [defense counsel]: What is that now?

"Mr. Essling [government counsel]: He said of course he went to the reformatory when he was a kid, how could he help that."

It would seem from the excerpt that the prosecuting attorney, as well as defense counsel, failed to hear defendant's answer correctly but there is no indication that the incident occasioned any prejudice to defendant. The other instances of alleged unfair conduct of government counsel in misstating the evidence are no more substantial than the one referred to. We have examined each of them and deem it sufficient to say that none of them could have been prejudicial to defendant.

▮ Defendant also charges that government counsel was unfair in constantly asking his witnesses leading questions. Defendant's brief refers to only two such instances. One occurred during the preliminary phase of a witness's direct ex-

amination, and consisted merely of laying the foundation for his testimony. This procedure seems to be accepted as proper in many courts. Even if technically improper, it has not been shown on this record to have been prejudicial to the defendant. The other instance cited as improper leading by government counsel was the following question to the government witness who purchased narcotics from the defendant:

"Q. And you went to Felix Williams, didn't you, because you knew that was the only place to get a large quantity [of narcotics], isn't that right?"

The record does not show an objection interposed by defendant to this question and the error, if any, must be deemed to have been waived.

▮ Defendant next claims the conduct of government counsel was improper in that he interrupted, on cross-examination, the testimony of a defense witness. This claim is without merit because the witness's answer was not responsive, it was repetitious of his previous testimony, no objection was offered, and the witness later completed the answer under examination by defense counsel.

▮ Defendant further charges that government counsel was unfair in bringing in names of other "dope peddlers" and users, to the prejudice of the defendant. Defendant was asked if he had ever talked with Joe Schwartz, his employer, about narcotics and whether he knew Schwartz was a convicted narcotics peddler. These questions were clearly proper as defendant had testified on direct examination that he knew nothing about narcotics, had never used them himself and had never been around anyone who did. Defendant's counsel apparently thought the questions were proper as no objection was made at the time they were asked.

Other instances of alleged improper questioning by government counsel, except one, were not objected to by defendant and any error in respect to them

must be considered as having been waived. Defendant did object to a question asked defense witness Tanksley regarding a roll of money he gave to the defendant and what the money was for. Government counsel stated, at that time, that he would have evidence to connect up the matter and in rebuttal did introduce testimony tending to establish that Tanksley said the roll of money belonged to defendant and that he had to give it to him. We find nothing improper or prejudicial in government counsel's questioning of defense witnesses.

◼ Defendant also contends that throughout the trial the court maintained and exhibited an antagonistic and improper attitude toward the defendant. This contention we find to be clearly without merit. On two occasions the court mildly rebuked the defendant for not responding to the questions asked. We find no justification for criticism of the court's action in this respect. It is the duty of the court to exercise control over the trial proceedings and it is to be commended, rather than condemned, for judiciously performing that duty. Where a witness insists on giving long, rambling answers to simple, direct questions we think it the proper course for the court to direct him to be responsive to the questions asked.

◼ (b). Defendant contends the court erred in receiving into evidence certain testimony of a government witness. Defense counsel was cross-examining the witness as follows:

"Mr. Mogren: You say that you know the defendant has sold dope. Have you made any formal charges against him yourself?

"The witness: Well, when you see—

"Mr. Mogren: Answer yes or no.

"The Court: Give him an opportunity to answer the question.

"Mr. Mogren: That can be answered yes or no.

"The Court: I don't think it can.

"Mr. Mogren: Have you made any formal charges?

(Thereupon, the witness related in some detail actions of defendant observed by him which caused his belief that defendant was engaged in illegal narcotic activity.)

"Mr. Mogren: Now, at this time I am going to move for a mistrial on the ground the Court permitted this man to tell a story that is hearsay, that has nothing to do with any question. I merely asked him the one question as to whether or not he was making a formal charge.

"The Court: You asked this witness why he believed that your client was selling dope and he told you.

"Mr. Mogren: I asked no such question. * * *

"The Court: The answer may stand."

The court quite obviously interpreted the question as calling for an explanatory answer stating the basis for the witness's belief that defendant was selling dope. The record shows that testimony had already been given, without objection, to the effect that the Narcotics Bureau and this particular witness knew that defendant was trafficking in drugs and narcotics. Defendant was on trial formally charged with illegal possession and sale thereof. The indictments had been returned by the grand jury. The question "Have you made any formal charges against him yourself" was somewhat ambiguous. If it was intended to inquire whether the witness had formulated what he had observed of defendant's activities into charges against defendant then the answer would appear to be proper. In this connection we note that the answer merely repeated matters previously testified to by government witnesses. We also note that defendant was fully apprised of the court's interpretation of the question and, instead of withdrawing it when the witness was given permission to give an explanatory

answer, repeated the question a second time. We conclude that the court's ruling on this question was not erroneous and that defendant was in no wise prejudiced by the answer given.

█ Defendant also contends the court erred in failing to rule on his motion to strike certain testimony. Government witness Gronseth testified to a meeting at which defendant and defense witness Tanksley were present. She testified that defendant had a penny box of matches. The next question was:

"Q. And what did they do with the contents that was in the penny box of matches?

"A. They had some cigarette papers and they rolled themselves marijuana cigarettes.

"Mr. Mogren: Just a minute, I will object to that, she's not competent to tell what's in those cigarettes and I ask it to be stricken.

"Q. Did they say what it was? A. Yes, they did.

"Q. What did they say it was? A. Marijuana."

Clearly there was no error in the failure of the court to rule on defendant's motion to strike the testimony. The testimony subsequent to defendant's objection and motion showed the basis for the assertion that the cigarettes contained marijuana. No possible prejudice could have resulted to defendant by reason of the court's failure to rule on the motion. See and compare Kubik v. U. S., 8 Cir., 53 F.2d 763.

█ Defendant next urges that the court erred in admitting in evidence a written statement that was given to the arresting officers by one Beechem. Objection was made to the statement on the trial that it was hearsay and irrelevant and it is so argued here.

The record includes the following circumstances connected with the Beechem statement. Defendant testified that he "was being persecuted and framed" by the officers in these cases and he called among others a witness named Stone who testified that the officers arresting him had gotten a statement from him accusing defendant of supplying him with narcotics. That the statement was false but that the officers induced Stone to make it by promising him a "shot of dope". When he made it they gave him the shot. The testimony of three officers who participated in the arrest and questioning of Stone was to the effect that they arrested the two known narcotic addicts Stone and Beechem together and questioned them about the source of their narcotics. They offered no inducements to them but merely sought to ascertain the truth. Stone's statement showed he obtained narcotics from defendant. Beechem's was to the effect that he had never purchased from defendant. But the evidence of the officers was that both addicts were accorded the same treatment. They were both given an injection of morphine sulphate and hospitalized.

The according of the same treatment to the addict who accused defendant as was accorded to the addict who did not accuse him had some tendency to corroborate the officers and refute Stone. The admission of the Beechem statement declaring Beechem had not obtained narcotics from defendant was not prejudicial to defendant. Its admission in evidence was not reversible error.

█ It is also argued that the court erred in receiving in evidence Government Exhibit 6, a gum wrapper containing narcotics seized from defense witness Wilson on his arrest prior to the date of this trial. Wilson testified that he had never purchased narcotics from the defendant. The government in rebuttal called the officer who had arrested Wilson. He identified the gum wrapper and testified that Wilson, at the time of his arrest, stated defendant was supplying him with 100 capsules of heroin at a time, that he used part of it himself and sold the rest. We think Government Exhibit 6 was competent as tending to impeach Wilson's testimony and find no error in its admission in evidence.

The final argument advanced on appeal is that government witnesses volunteered, and the court received, testimony not requested by defense counsel. The two instances cited in defendant's brief occurred on cross-examination of a government agent. The answers now charged to have been given gratis were, in our opinion, directly responsive to the questions asked. Further, defendant was apparently satisfied with the answers received as he entered no objections nor did he move to have the testimony stricken. We find no error in the reception of this evidence.

All of the points contended for by defendant have been considered but we find no reversible errors therein. Defendant received a fair trial and was convicted upon substantial evidence. The judgment is affirmed.