Charles H. **PHILLIPS**, Plaintiff,

v.

**UNITED STATES BOARD OF PAROLE**
et al., Defendants.

No. 65 C 1774.

United States District Court
N. D. Illinois, E. D.

March 31, 1966.

Jack Arnold Welfeld, Chicago, Ill., for plaintiff.

Edward V. Hanrahan, U. S. Atty., Arthur D. Rissman, Asst. U. S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

PARSONS, District Judge.

On March 23, 1964, Charles H. Phillips brought an action against the United States Board of Parole seeking his release from detention on the ground that the United States Board of Parole had revoked his conditional release from a previous sentence without affording him a local revocation hearing of the kind contemplated in Hyser v. Reed, 115 U.S. App.D.C. 254, 318 F.2d 225 (1963). Jurisdiction is invoked by virtue of Title 28, United States Code, Section 1343, and Title 28, United States Code, Sections 2282–2284.

This cause has been transferred to the Northern District of Illinois pursuant to 28 U.S.C. §§ 1391(e) and 1404(a), according to the procedure outlined in Van Dusen v. Barrack, 376 U.S. 612, 623, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). The suit was originally filed in the Federal District Court in Washington, D. C. The District Court had granted summary judgment in favor of the United States Board of Parole and was reversed by the Court of Appeals for the District of Columbia (Phillips v. United States Board of Parole, 352 F.2d 711 [1965]). The Court of Appeals stated at page 715:

"Although the literal requirements of Rule 56(e) may not have been complied with we think the record disclosed a 'genuine issue' as to whether appellant had refused to request, and had thereby waived, a local hearing prior to the revocation of his release."

The Court of Appeals further stated at page 715:

"Only three facts emerge with any clarity from this scrambled collection of allegations and counter-allegations. The first is that appellant is now incarcerated solely because of alleged violations of his conditional release. He has never yet been prosecuted on the charge on which he was arrested in Nevada and for which, among other things, his release was revoked. (The record does not disclose whether that charge is still pending against him.) Second, appellant's release was revoked without a hearing of the kind contemplated by this court in Hyser v. Reed.

Appellees have never suggested otherwise but have contended throughout that appellant on two occasions waived his right to such a hearing. And, third, appellant has never had a hearing on whether he did in fact waive his right to a prompt, local hearing before his release was revoked. We think that, at a minimum, he is entitled to a hearing on this latter issue."

According to the directive of the opinion cited above, I set the matter down for hearing on January 13, 14, and 17, 1966, in order to determine whether Charles Phillips had waived his opportunity to have a local revocation hearing.

Plaintiff was first convicted of a Federal narcotics violation on January 13, 1956. He received a ten year prison term. In 1962, he was conditionally released to the Northern District of Illinois after a confinement of about six years and one month. Plaintiff states that he lived in Chicago and operated his own restaurant business. He alleges that he received a telephone message informing him that his sister in California was critically ill and he decided to visit her. There is some confusion in the record concerning whether Mr. Phillips received permission to leave the jurisdiction. While evidence on this issue would be relevant to the Parole Board in determining whether there had been a parole violation, I do not deem it relevant to the issue before me, i. e., whether Charles H. Phillips waived his right to a local revocation hearing.

In the course of the hearing before me, appellant testified that after he arrived on the West Coast he decided to stop in Las Vegas to play at The Casino. On September 15, 1963, he was arrested in Nevada on another narcotics charge. (Docket No. 9, Case No. 138, alleged violation of Title 26, Section 4704 [a] U.S. C.). A parole violation warrant issued, but it was not served upon him in Nevada. Phillips was then arraigned in Nevada on still another narcotics violation charge emanating from the Northern District of Illinois, and, in October 1963, he was removed from Nevada to Chicago to answer to the complaint on that charge.

Phillips testified that after he was here in Chicago, the parole violation was brought to his attention by Parole Officer Lee A. Rubens, but that instead of receiving the requested local hearing, he was returned to the Federal Penitentiary at Leavenworth, Kansas, where he submitted under protest to a hearing before the Board of Parole. It was determined at this hearing that he had violated the conditions of his parole, and he was ordered to serve the entire unexpired portion of his original sentence. Since the mandatory release occurred about forty-seven months prior to the termination of sentence, he now stands to be incarcerated for the remainder of that period of time.

The testimony of one David Julius Strong, another parole violator, was that on October 21, 1963, he saw plaintiff in custody at a meeting at which plaintiff and a John McMullen, still another alleged parole violator, conferred with Lee A. Rubens, a Parole Officer, on how to fill out Form 59a. Mr. Strong testified that Mr. J. Homer Heagley and Mr. Ben Meeker of the Probation Office also were present, and that he observed Phillips sign a document, although he could not state positively that it was Form 59a.

Mr. Rubens testified that on three occasions Mr. Phillips was given an opportunity to elect a local hearing, and failed to do so by refusing to sign Form 59a. The first opportunity was on October 21, 1963, when they met with plaintiff in the United States Marshal's Conference Room. He stated that subsequently, on December 24, 1963, Mr. Phillips was contacted twice regarding Form 59a, but that he would not elect any of the alternatives available to him on the form.

The fact of a meeting on October 21, 1963, was substantiated by the testimony of Mr. Rubens, that he and Dr. Charles Meyer of the Federal Probation Office met with Mr. Phillips in the Conference Room of the United States Marshal's Lockup on that date. However, Dr.

Meyer did not recall whether he was present or, if so, whether plaintiff made any election at that time. Another version of the events of October 21, 1963, was given by Mr. Joseph G. Colosimo, a third United States Probation Officer. Mr. Colosimo stated that, on October 21, he interviewed John McMullen in the presence of Cecil Partee, an attorney for Mr. McMullen, and that no one else was present.

Two documents were introduced in evidence by the United States Board of Parole to corroborate the testimony of Mr. Rubens and Dr. Meyer. The first is a letter written by Mr. Rubens to Mr. Joseph N. Shore, a parole executive in Washington, D. C., and dated October 29, 1963. On Page 4 of the highly detailed factual account, the letter states in pertinent part:

> "It should be noted that Mr. Phillips did not refuse to sign Form 59a out of any pronounced resistance on his part. His decision appeared to be based on lack of understanding of possible consequences should the Government decide not to prosecute him after he had chosen an alternative and signed Form 59a."

The second document is Form 59a itself, with a notation in the upper right-hand corner in the handwriting of Mr. Rubens, which states: "Mr. Phillips refused to sign Form 59a in presence of PO and Sup. Charles Meyer on two occasions on 12-24-63." This form was in the Phillips' file here in Chicago.

Form 59a has recently come into use in cases of alleged Federal parole violation. Presumably the form is to be tendered to the suspected violator so that he may select one of three alternatives by checking the appropriate place on the form. The three choices are as follows: (1) that he be afforded a revocation hearing by the Board of Parole upon his return to a Federal institution; (2) that his preliminary interview be postponed to enable him to obtain counsel and witnesses to compile a record as to why his parole should not be revoked; and (3) that he request a local revocation hearing. In the interest of accuracy, photographs of the front and reverse sides of the form follow:

Parole Form 59a (Oct. 1963)

UNITED STATES DEPARTMENT OF JUSTICE
United States Board of Parole
Washington, D. C. 20537

Attorney-Witness Election Form

LOCAL REVOCATION HEARING

The Rules of the Board of Parole provide that an alleged parole or mandatory release violator shall be afforded a preliminary interview by an official designated by the Board and shall be held in custody of the United States Marshal until the interview has been completed and until further disposition is made by the Board. The Rules also provide that the alleged violator shall be afforded a revocation hearing by the Board following the preliminary interview. If desired, the alleged violator may be represented by an attorney of his own choosing and/or present voluntary witnesses having information relevant to the charges. In all cases, the counsel and witnesses must be notified by the alleged violator and secured at his own expense.

The following procedures will govern the preliminary interview and local revocation hearing:

1. If the prisoner admits or does not deny that he is guilty of violating the conditions of his release, or if he has been con-

victed of an offense committed since release, he will be returned to a federal institution where he will be afforded a revocation hearing before the Board of Parole. He will also be returned if he denies his guilt but waives the local revocation hearing.

2. If a prisoner whose circumstances are as described above desires to secure an attorney and/or witnesses to provide information of a mitigating nature before being returned to a federal institution, the preliminary interview will be postponed upon request to a time and place to be set by the official conducting the interview so that the prisoner may make arrangements for the appearance of such persons at the postponed interview.

3. If the prisoner denies he is guilty of violating any of the conditions of his release; has not been convicted of a crime; and requests a local revocation hearing reasonably near the place of alleged violation in order that he may arrange for the services of an attorney and/or the appearance of voluntary witnesses to present testimony in his behalf bearing upon the violations charged, such a hearing will be held by the Board prior to further disposition of the prisoner. If two or more violations are charged, the Board subsequently will determine the place of such hearing and notify the alleged violator.

A preliminary interview or a local revocation hearing will be postponed, upon request, for a period up to 30 days in order that the prisoner may arrange for counsel and/or witnesses to appear at the interview or hearing. A postponement beyond 30 days will not be granted except at the discretion of the Board.

NOTE: The reverse side of this form is to be completed by the alleged violator.

_____

(date)

Having been fully advised of the Rules of the Board as stated on this form:

1. I REQUEST THAT I BE AFFORDED A REVOCATION HEARING BY THE BOARD OF PAROLE UPON MY RETURN TO A FEDERAL INSTITUTION.

    (a)......I admit that I violated one or more of the conditions of my release.

    (b)......I have been convicted of a crime committed while under supervision.

    (c)......I deny that I violated any of the conditions of my release and I have not been convicted of a crime committed while under supervision. Although I fully understand that I can have a local revocation hearing reasonably near the place of the alleged violation (or one of the violations if more than one is charged), I do not desire such a local hearing and hereby waive my right thereto, preferring to be returned to a federal institution for my revocation hearing.

2. I REQUEST THAT MY PRELIMINARY INTERVIEW BE POSTPONED.

......I admit that I violated one or more of the conditions of my release but desire a postponement of my preliminary interview in order to secure, at my own expense, an attorney and/or witnesses to appear in my behalf at such postponed interview in order to provide information bearing on the question whether my parole or mandatory release should be revoked.

3. I REQUEST A LOCAL REVOCATION HEARING.

......I deny that I violated any of the conditions of my release and request a local revocation hearing in order that, at my own expense, I may arrange for the services of an attorney and/or the appearance of voluntary witnesses to present testimony in my behalf bearing upon one or more of the violations charged.

NOTE: Each alleged violator is to choose only one of the three alternatives listed above.

_____        _____
(Signature of Witness)    (Title)      (Name)          (Register No.)

_____
        (District)                              .

Instructions: Names and addresses of attorneys and witnesses are to be listed below. Complete this form in triplicate: original to the Board, a copy to the federal institution from which the prisoner was released, and a copy to be retained by the probation officer.

———◆———

Much of the dilemma which necessitated a hearing to determine whether plaintiff was not in fact entitled to a local hearing stems from weaknesses inherent in the Attorney-Witness Election Form (Parole Form 59a). They might be avoided by a revision of the form.

The alleged parole violator lacks protection in the event that he is accused of refusal to sign the form. He has no proof of a signed copy. The current procedure specifies three copies—one for the Board of Parole, one for the assigned Probation Officer and one for the files of the Federal institution to which the parolee is returned. An additional carbon copy of the form should be tendered to the parolee, so that he has proof of its execution. If in fact the alleged parole violator refuses to sign the form, there is now no provision for certification of such refusal.

The alternatives provided on Form 59a give the parolee a rather restricted choice. For example, it is not clear whether, upon admission of guilt, the parolee may postpone a local hearing in mitigation. In the instructions on the form, confusion results from interchangeable use of the expressions "preliminary interview" and "local revocation hearing".

Not only does Form 59a afford inadequate protection to the parolee, but it

places the Probation Officer in a difficult situation. The Probation Officer finds himself in a multi-role position. He functions as arresting officer, prosecutor, defense counsel, and judge. This appears especially true in Alternative II for a postponed preliminary interview. This is not a hearing, but an interview of the alleged violator by the Probation Officer, which culminates in an evaluation of the circumstances surrounding the suspected parole violation.

The form fails to give this officer with his several duties a record as to how faithfully he may have discharged each. For example, the alleged parole violator may charge that the Probation Officer, during the preliminary interview, failed to give him the reasons for the violator's warrant or to advise him of his legal rights, or even to read or explain the form to him. The form provides no matter of record which would certify that these functions were carried out.

The form appears deceptively simple in the presentation of alternatives and yet it precipitates in the matter before me the following evidentiary dilemma:

Charles Phillips contends that he signed Form 59a and elected to have a local revocation hearing. The United States Board of Parole takes the position that on three occasions Phillips was given an opportunity to elect a local hearing by checking and signing the appropriate parts of the form and yet he refused to do so, and that the refusal to select any of the alternatives appearing on Form 59a constituted a waiver of the option to have a local revocation hearing. An adequate form would dispel these conflicts.

Phillips contends: (1) that he did not waive his right to a local revocation hearing; (2) that the hearing conducted before the Board of Parole at Leavenworth, Kansas, did not replace the local hearing and was therefore invalid; and (3) that in any event he should not be required to serve the entire unexpired portion of his original sentence.

Contention (3) is not well founded, since it is contrary to the provisions of Title 18, Sections 4205 and 4207 of the United States Code. The constitutionality of these provisions has been upheld. Story v. Rives, 68 App.D.C. 325, 97 F.2d 182, cert. denied 305 U.S. 595, 59 S.Ct. 71, 83 L.Ed. 377 (1938); Hodge v. Markley, 339 F.2d 973 (7th Cir. 1965); Van Horn v. Maguire, 328 F.2d 585 (5th Cir. 1964). Contentions (1) and (2) are not resolved so readily.

I am not persuaded by the argument that mere refusal to sign Form 59a should be tantamount to waiver of a local revocation hearing. A reasonable man may have good cause to balk upon presentation of a document in which he may surrender a valuable opportunity to rebut the charge of a parole violation. However, an alleged parole violator may not frustrate the statutory scheme by a persistent refusal to select any of the alternatives available to him even on Form 59a with its inadequacies, and after being adjudged a parole violator by the Board of Parole take the position that he was never afforded a local revocation hearing.

Although the controversy before me is a civil action, it acquires some of the characteristics of a criminal proceeding. Plaintiff seeks his remedies while in Federal custody and his freedom is in issue. Under these circumstances, what are the proper criteria for considering the evidence as presented?

There are competing analogies offered to the Court as precedents in the law of waiver. It is suggested that a parolee's right to a local hearing is not founded upon the Federal Constitution, but upon the concept of fairness embodied by Congress in the statutory parole scheme. Richardson v. Markley, 339 F.2d 967 (7th Cir.); Glass v. Markley (7th Cir.), 339 F.2d 970; Hodge v. Markley, 339 F.2d 973 (C.A. 7th 1965).

It is suggested that the rigorous standards applied to the waiver of such constitutional guarantees as the right to a jury trial and right to counsel are inapplicable where waiver of a "non-constitutional" right is involved. In support of this con-

tention, respondent offers analogies of waiver of improper venue, Bistram v. United States, 253 F.2d 610 (8th Cir.), Carbo v. United States, 314 F.2d 718 (9th Cir.); of waiver of the right to claim error because of failure to interpose objections to leading questions, Williams v. United States, 216 F.2d 529 (8th Cir.); of waiver of the right to challenge the sufficiency of an indictment when the challenge is untimely, United States v. Galgano, 281 F.2d 908 (2nd Cir.), United States v. Private Brands, Inc., 250 F.2d 534 (C.A. 2nd), United States v. Nickerson, 211 F.2d 909 (7th Cir.). While there may be some justification for categorizing rights in constitutional and nonconstitutional terms, I consider analogies such as waiver of improper venue inapposite to the problem in the present situation.

In the consolidated cases known as Hyser v. Reed, supra, appellants contended that hearings before the Parole Board were invalid because they did not afford the alleged parole violator the following traditional due process safeguards: (1) appointed counsel for indigents; (2) specification of charges; (3) confrontation and cross-examination of the Board's informants; (4) the right to examine confidential reports of the Board; (5) compulsory process to obtain witnesses for the parolee; and (6) a hearing held in the district where the alleged parole violation occurred. The contentions of the appellants were rejected in all categories except (6), i. e., the right to a preliminary hearing in the district where the alleged violation occurred. The opinion emphasizes the significance of the local revocation hearing in the statutory framework, and it assumes critical importance when viewed in the context of a decision which rejected appellants' other contentions.

■■ One should not seek the formulation of ironclad rules regarding the waiver of a local revocation hearing when the liberty of an individual is in the balance, and when the statutory scheme provides that one adjudged to be a parole violator may be required to serve the entire unexpired portion of his original sentence, while receiving no credit for time which passed in the custody of parole. It would be an inflexible principle, indeed, which would hold that whenever one fails to sign Form 59a, such failure constitutes the waiver of an opportunity to have a local revocation hearing. It seems to me that such waiver should be reflected in more than a mere preponderance of evidence. The "preponderance of evidence" rule usually applicable to civil cases does not appear proper in the instant case. Nevertheless, when viewed against a standard such as "clear and convincing evidence", I am satisfied in the matter here before me that plaintiff persistently refused to elect a local hearing.

In the hearings conducted after remand and transfer to the Northern District of Illinois, plaintiff has been represented by competent court-appointed counsel, and I have had the opportunity to assess the credibility of the representations of opposing parties. In this context, I find that the testimony of Mr. Rubens, corroborated by the testimony of Dr. Meyer and Mr. Colosimo, is not adequately controverted. Even assuming that David Strong was not mistaken about the meeting which occurred on October 21, 1963, on cross-examination it was adduced that he could not positively identify the document tendered to plaintiff on that occasion.

The only evidence standing against the testimony of Mr. Rubens and Dr. Meyer concerning additional opportunities to elect a hearing on December 24, 1966, is that of plaintiff. I have some doubt about the credibility of plaintiff's testimony since, among other things, he was been unable to verify aspects of his California trip, which gave rise to the present controversy. In the letter of Lee A. Rubens to Joseph Shore, dated October 29, 1963, there is considerable information which tends to impeach the credibility of the testimony of plaintiff. Although plaintiff alleges that he decided to visit an ill sister named Ann Cantrelle, residing on Route 1, Box 311, Garvey,

California, on September 2, 1963, a review of an atlas made by the Probation Office revealed no such area.

I find, on the basis of affidavits and testimony received that Charles Phillips was afforded an opportunity to elect a local revocation hearing on more than one occasion, and that at such times he was fully apprised of the alternatives open to an alleged parole violator.

■ I find, from the evidence before me, that plaintiff did in fact waive his opportunity to have a local revocation hearing, when he persisted in his refusal to select any of the alternatives provided even by the instant, inadequate Form 59a.

Accordingly, I enter judgment for the defendant and against the plaintiff in this matter.