**UNITED STATES ex rel. Edgar McCREARY**

v.

**Frank KENTON, Warden, Federal Correctional Institution, Danbury, Connecticut.**

**Civ. No. 8312.**

United States District Court
D. Connecticut.

June 27, 1960.

Samuel A. Persky, New Haven, Conn., for petitioner.

Harry W. Hultgren, Jr., U. S. Atty., Dist. of Conn., Hartford, Conn., W. Paul Flynn, Asst. U. S. Atty., New Haven, Conn., for respondent.

ANDERSON, Chief Judge.

The petitioner, on June 30, 1955 was convicted, in the U. S. District Court for the Southern District of New York, of conspiring to violate the narcotics laws, specifically Title 21 U.S.C. § 174, and was sentenced to five years imprisonment. The prison records, which are not disputed, indicate that after he served 1,239 days and had accumulated a total of 588 days of statutory and meritorious good time, he was granted a mandatory release pursuant to the provisions of § 4163 and became a parolee as provided in § 4164 under which he was subject to supervision for 408 days. The petitioner's conditional release took place on November 19, 1958, prior to which he had signed a written agreement to comply with the specified terms of his conditional release.

On November 25, 1959 and within the 408 days above mentioned, a warrant was issued by the U. S. Board of Parole, pursuant to which the petitioner was returned to the Federal Correctional Institution at Danbury, Connecticut, on December 3, 1959 for breach of parole. On December 9, 1959 the petitioner was notified to appear and did appear before Eva Bowring, a member of the Parole Board, and by her was advised of the reasons for the issuance of the warrant and for his return to the Correctional Institution. These reasons, if true, constituted breaches of the conditions of his parole. The petitioner was asked whether or not he had something he wanted to say and in reply the petitioner stated, "I would like very much to have a chance to prove that I was living a decent life." He in general terms recited some matters in refutation or in avoidance of the charges made but did not mention nor was he asked the proof or sources of proof which he had to support his representations. The member of the Board replied "we will bear this in mind."

The question presented in this case concerns an interpretation of Title 18, § 4207. Specifically, what is meant by the phrase "opportunity to appear" in the context of the statute, the first paragraph of which reads as follows:

"A prisoner retaken upon a warrant issued by the Board of Parole, shall be given an opportunity to appear before the Board, a member thereof, or an examiner designated by the Board."

The petitioner claims that "to appear" means that he is entitled to a full-dress hearing with right to representation by counsel and with the right to have witnesses called on his behalf. He also claims that the Board has a duty to give him timely notice of these rights. In

support of his position he cites the leading case in the D. C. Circuit, Fleming v. Tate, 1946, 81 U.S.App.D.C. 205, 156 F. 2d 848, which was followed by Moore v. Reid, 1957, 100 U.S.App.D.C. 373, 246 F.2d 654.

The Government claims that the petitioner, as a retaken prisoner, had no right to counsel or to summon witnesses or to have anything more in the nature of a hearing than what was actually afforded him. It cites Hiatt v. Compagna, 5 Cir., 1949, 178 F.2d 42, 46, 47, which went to the Supreme Court and was affirmed by an evenly divided court, 1950, 340 U.S. 880, 71 S.Ct. 192, 95 L.Ed. 639.

■ The provisions of Chapter 311 of Title 18 make it perfectly clear that the withholding, granting and revoking of parole are matters wholly within the discretion of the Board of Parole. Parole is a matter of grace and not of right. Hiatt v. Compagna, supra, 178 F.2d at page 45; Freedman v. Looney, 10 Cir., 1954, 210 F.2d 56. Revoking of parole, like the granting of it in the first instance, is not, under the statutes, intended to be determined by means of the full-dress adversary proceedings of a trial with right to counsel, right to summon witnesses, right of confrontation, etc. The words "opportunity to appear" do not call for a hearing of this sort. It is not lack of administrative due process that the prisoner is not entitled to have witnesses summoned and heard or that he may not appear with counsel. If changes are to be made to permit them, Congress and not the courts should make the appropriate changes. A provision in the District of Columbia Code 1951, § 24–206 includes a 1947 amendment to the earlier provision which was similar to Title 18, § 4207. The amendment expressly provided that the prisoner had a right to appear with counsel. Congress significantly did not at the same time amend the identical provision of § 4207.

■ Of course, the Parole Board, like other bodies vested with power to exercise discretion, must have some reasonable basis for making its determinations. It cannot act arbitrarily or heedlessly, or through whim or caprice. Moreover, Congress in using the words "opportunity to appear" meant something more than the mere physical appearance of the prisoner before a member of the Board who would advise the prisoner why he had been retaken. It meant that the prisoner would be told of the charges on which the claim of breach of parole was based and that the Board member would hear the prisoner's version of the incident or incidents involved in the charges and what evidence or sources of proof the prisoner claimed were available to sustain his version. It meant that the Board would give fair consideration to what the prisoner had to say and to any relevant statements or affidavits of persons claiming to have knowledge of the facts, which the prisoner had furnished to the Board. It meant further investigation of sources of information where warranted.

The Government's Memorandum filed in this case says,

"The hearing by the Board's representative is sufficiently long to permit the individual ample opportunity to explain any justification or extenuating circumstances surrounding the behavior which led to the warrant being issued. He may deny the allegations altogether and make any supporting statement in his own behalf. The hearing Member questions the alleged violator regarding the allegations set forth as the basis for the warrant to further clarify the true facts."

Had this procedure in fact been followed in this case, it would have gone a long way toward providing the petitioner with the "opportunity to appear" to which he was entitled.

■ The transcript discloses that the Board member, after identifying the prisoner, asked one question—the one which the Member herself was supposed to answer—"How did you violate your release?" When the prisoner said he wanted a chance to prove that he had been living a decent life, he was not asked a single question about sources of

information or proof which he could point out which would exonerate him or contradict the claimed violations. The prisoner's representations were not discussed with him at all. The statute contemplates something more than the sterile, pro-forma proceeding adopted in this case.

Unless within 14 days the petitioner is given an opportunity to appear before the Board, a member thereof or an examiner designated by the Board as provided in Title 18, § 4207 and the Board again reviews the matter of revocation of petitioner's parole, and makes a determination with regard to it, the petitioner is ordered discharged on July 12, 1960.