UNITED STATES ex rel. Louis OBLER

v.

Frank F. KENTON, Warden, Federal Correctional Institution, Danbury, Connecticut.

UNITED STATES ex rel. Edward O. CHEVRETTE

v.

Frank F. KENTON, Warden, Federal Correctional Institution, Danbury, Connecticut.

UNITED STATES ex rel. David Woodward COVEY

v.

Frank F. KENTON, Warden, Federal Correctional Institution, Danbury, Connecticut.

Civ. Nos. 11587, 11580, 11658.

United States District Court
D. Connecticut.

Jan. 6, 1967.

Stephen E. Ronai, Milford, Conn., for petitioners.

Jon O. Newman, U. S. Atty., and John Cassidento, Asst. U. S. Atty., New Haven, Conn., for respondent.

## MEMORANDUM OF DECISION

ZAMPANO, District Judge.

These three habeas corpus cases raise the common issue whether there has been an unreasonable delay in providing a parole revocation hearing for each of the petitioners. The cases were consolidated for consideration and hearings were held [1] at which the petitioners were represented by court assigned counsel, Stephen E. Ronai, who previously served in a similar case with distinction and success.[2]

### I

Dire consequences face the parole violator who is returned to prison because he no longer is considered a fit subject for rehabilitative treatment in the community. He is required to serve the unexpired term of his original sentence, without a credit for the time he was on parole. 18 U.S.C. § 4205. In addition, all prior statutory good time earned when he originally was incarcerated is automatically forfeited. 18 U.S.C. § 4205; McKinney v. Taylor, 358 F.2d 689, 690 (10 Cir. 1966); Tr., Shore, p. 291. In some cases these penalties have the anomalous result of requiring a violator to spend more time actually incarcerated than he would have spent under the maximum sentence originally imposed.[3] See, also, Mock v. United States

---

1. Hearings were held on October 31, 1966, November 9, 1966, and November 21, 1966. In addition to the testimony of the three petitioners, the Court had the benefit of the testimony of Parole Executive Joseph Shore, Gerald Wright, parole officer, Prison Classification Officer Joseph Donahue, Thomas Muddiman, parole officer, and Anthony Dirienzo and George Douglas, United States marshals. Comprehensive briefs were filed by the parties on December 27, 1966.

2. United States ex rel. Hitchcock v. Kenton, 256 F.Supp. 296 (D.Conn.1966).

3. This Court has knowledge of two cases wherein the violators were originally sentenced to five year maximum sentences and, as a result of parole violation, the violators served six years and seven years, respectively. See, also, Tr., Shore, p. 291.

Board of Parole, 120 U.S.App.D.C. 248, 345 F.2d 737 (1965); Stevenson v. United States, 250 F.Supp. 859 (D.Mich. 1966).

Yet, since the Supreme Court's pronouncements in Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935), the courts uniformly have held that revocation hearings are not criminal prosecutions circumscribed by constitutional protections.[4] In *Escoe,* it was held that the provisions of the Federal Probation Act [5] required notice and a hearing prior to revocation of probation. But the Supreme Court specifically denied that such procedures were compelled by the Constitution:

"In thus holding we do not accept the petitioner's contention that the privilege has a basis in the Constitution, apart from any statute. Probation or suspension of sentence comes as an act of grace to one convicted of a crime, and may be coupled with such conditions in respect of its duration as Congress may impose." 295 U.S. at 492, 55 S.Ct. at 819.

The Court went on to say, at page 493, 55 S.Ct. at page 820:

"Clearly the end and aim of an appearance before the court must be to enable an accused probationer to explain away the accusation. * * * This does not mean that he may insist upon a trial in any strict or formal sense. * * * It does mean that there shall be an inquiry so fitted in its range to the needs of the occasion as to justify the conclusion that discretion has not been abused by the failure of the inquisitor to carry the probe deeper."

■ Thus the procedural safeguards now afforded the alleged parole violator are premised, not on due process, but on the provisions of the parole statutes, the "needs of the occasion" and notions of fair play.

## II

A parolee who is retaken into custody upon a violator's warrant "shall be given an opportunity to appear before the Board * * *". 18 U.S.C. § 4207.

■ In order that the "opportunity to appear" at a revocation hearing be an "effective appearance",[6] and not a sterile, pro forma appearance,[7] the hearing must be held within a reasonable time [8] and the alleged violator must be informed of his rights to retain counsel [9] and to present voluntary witnesses.[10]

■ The purpose of the hearing is 1) to determine whether in fact there has been a transgression, and 2) if so, to decide what future rehabilitative treatment is dictated by the circumstances.[11] The former issue in most cases merely requires recitation and proof of a past act and rarely poses a problem. But loss of parole status and reincarceration are not automatic consequences of parole infraction. The violation may be overlook-

---

4. Burns v. United States, 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266 (1932); Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225 (1963); Washington v. Hagan, 287 F.2d 332 (3 Cir. 1960); United States ex rel. McCreary v. Kenton, 190 F.Supp. 689 (D.Conn.1960); Note, Parole Revocation Procedures, 65 Harv.L.Rev. (1951). Contra, United States v. Boyden, 248 F.Supp. 291 (S.D.Cal.1965).

5. 18 U.S.C. §§ 3651, 3653.

6. Fleming v. Tate, 81 U.S.App.D.C. 205, 156 F.2d 848 (1946).

7. United States ex rel. McCreary v. Kenton, 190 F.Supp. 689, 692 (D.Conn.1960).

8. United States ex rel. Buono v. Kenton, 287 F.2d 534, 535 (2 Cir. 1961).

9. Moore v. Reid, 100 U.S.App.D.C. 373, 246 F.2d 654 (1957).

10. Reed v. Butterworth, 111 U.S.App.D.C. 365, 297 F.2d 776 (1961).

11. United States ex rel. McCreary v. Kenton, supra note 7, 190 F.Supp. at 691; Brown v. Taylor, 287 F.2d 334, 335 (10 Cir. 1961), cert. denied 366 U.S. 970, 81 S.Ct. 1933, 6 L.Ed.2d 1259; United States ex rel. Vance v. Kenton, 252 F.Supp. 344, 346 (D.Conn.1966); Note, Freedom and Rehabilitation in Parole Revocation Hearings, 72 Yale L.J. 368, 372 (1962).

ed,[12] the violator may be immediately re-paroled,[13] or he may be required to serve only a part of his original sentence.[14] If the "opportunity to appear" is to have any purposeful structure, it must provide the violator with a fair opportunity to present his side of the story to the Board to induce it to give him another chance.

An effective hearing, therefore, necessarily contemplates a hearing within a reasonable time after rearrest. This procedural safeguard is important to prevent undue, frustrating pre-hearing incarceration and to limit the possibility that a long delay will impair the ability of the violator to defend himself. Cf. United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1965). The Board's present administrative burdens,[15] of course, must not go unrecognized by the courts. On the other hand, as Judge Clark forewarned several years ago, to the extent the Board's administrative procedure results in prejudicial, tardy hearings it is inconsistent with the statutory purpose of revocation hearings. United States ex rel. Buono v. Kenton, 287 F.2d 534, 536 (2 Cir. 1961).

No mechanical test is dispositive. As with the claim of a deprivation of the right to a speedy trial,[16] whether there has been a deprivation of the right to a revocation hearing within a reasonable time depends upon all the circumstances of the case. A long delay in and of itself is but one element, albeit a forceful one,[17] to be considered. Timely objection to the delay, unavailability of witnesses, lost sources of mitigating evidence, the violator's own conduct as a contributing cause of the delay, and the Parole Board's reasons for the delay are factors which also must weigh in the balance.

### III

Following the landmark Hyser [18] decision, the Parole Board in 1963 amended its rules,[19] issued a set of instructions to personnel, and placed into use Form 59(a), which apparently was designed to indicate concisely the alleged violator's choice among three alternatives open to him after arrest for parole violation.

The new administrative procedures required that all accused violators be given a preliminary interview in the district of arrest as soon as reasonably possible after being taken into custody by a United States marshal. In this informal interview, a probation officer, acting as a parole officer, reads to the parolee the charges noted on the violator's warrant application. The parole officer by direct questions then must ascertain whether the parolee admits or denies [20] the allegations of the warrant.

If the parolee admits the violation (and does not wish to retain an attorney and/or call witnesses to appear at the interview [21]), the parole officer is

---

12. Birch v. Anderson, 358 F.2d 520, 527 (D.C.Cir. 1965).

13. Tr., Shore, pp. 205, 218, 305.

14. Stubblefield v. Kennedy, 117 U.S.App. D.C. 225, 328 F.2d 526, 528 (1964).

15. The Board annually conducts approximately 14,000–16,000 hearings a year, of which 1200–1400 are parole revocation hearings. Tr., Shore, p. 228.

16. United States ex rel. Buono v. Kenton, supra, 287 F.2d at 536.

17. United States ex rel. Vance v. Kenton, 252 F.Supp. 344 (D.Conn.1966).

18. Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225 (1963).

19. 28 C.F.R. § 2.40.

20. A parolee who denies his guilt is entitled to a local revocation hearing in the district of arrest to be conducted by a member of the Board or an examiner appointed by the Board. The procedures designed for the parolees in this category seem to be adequate and no problem arising from them has come to this Court's attention.

21. An admitted violator who desires an attorney and/or witnesses at the preliminary interview may have a thirty day continuance in which to obtain them. However, an indigent violator is not entitled to appointed counsel nor the compulsory attendance of witnesses. Hodge v. Markley, 339 F.2d 973, 974 (7 Cir. 1965), cert. denied, 381 U.S. 927, 85 S. Ct. 1564, 14 L.Ed.2d 685; Boddie v.

specifically directed to: 1) prepare a summary or digest of the interview, 2) make a reasonable effort to locate and interview witnesses with pertinent information or make a reasonable effort to obtain statements from witnesses by mail, 3) comment as to possible reinstatement or reparole, and 4) forward promptly his report to the Board of Parole. It is important to note that these directives are contained in a series of memoranda to the Board's personnel [22] but are *not* set forth in Form 59(a) used by the parole officer in the field.

The violator is then kept in local custody to await a determination by the Parole Executive or staff professional— not members of the Board—either to recommend reparole [23] or to return him to prison for a revocation hearing at a later date. The decision is promptly forwarded to the United States Marshal. If it is decided to reincarcerate the violator, a prison is designated and the violator is returned to await a revocation hearing by a member or agent of the Board. Prison revocation hearings generally are scheduled quarterly each year at the various federal institutions. [24]

Considering the scope of the Board's duties, obligations and administrative burdens, it appears that the Board has made a sincere effort to provide adequate procedures for the parole violator to state his case within a reasonable time after arrest. [25]

However, the system does, at times, break down in practice. First, many months of pre-hearing incarceration occur in a few cases when there is an inordinate delay in transferring the violator from local custody to the prison and, as a consequence, he misses the regularly scheduled quarterly meeting of the Board at the prison, or, due to clerical errors and inadvertence, the violator is not given the opportunity to appear when the revocation hearings are held at the prison. But it appears that these difficulties are infrequent and the courts are available to provide a remedy on a case to case basis. [26]

Secondly, and more basic a problem in the framework of the system, is the inadequacy of Form 59(a), used by the parole officers in the field at the time of the preliminary interview. The form is mislabeled, vague, ambiguous and con-

Weakley, 356 F.2d 242 (4 Cir. 1966); Hiatt v. Compagna, 178 F.2d 42 (5 Cir. 1949), aff'd by evenly divided court, 340 U.S. 880, 71 S.Ct. 192, 95 L.Ed. 639; Poole v. Stevens, 190 F.Supp. 938 (E.D. Mich.1960). Whether, in the light of recent cases, these holdings will persist as good law remains to be seen. See, e.g., Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Burns v. State of Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959); Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961); Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L. Ed.2d 21 (1962); Reed, Due Process In Parole Violation Hearings, 27 Federal Probation 38, 40 (June, 1963).

22. See, also, Chappell, Due Process Of Law As It Relates To Corrections, 29 Federal Probation 3, 5 (September, 1965).

23. The evidence before this Court disclosed that reparole at this stage of the

proceedings is frequent. Tr., Shore pp. 205, 218, 305; Tr., Dirienzo, pp. 319–320.

24. Parole Executive Shore testified that, in view of this Court's ruling in Vance v. Kenton, supra, revocation hearings for Danbury inmates will be conducted every two months. Tr., Shore, p. 232.

25. However, it is the Court's opinion that these procedures are not necessarily the most efficient ones that could have been devised by the Board. Much of the built-in administrative delay could be eliminated by allowing the admitted violator, by consent, to have a local revocation hearing in the district of arrest. This can be expeditiously accomplished by delegating the hearing function to the local probation officer, which presently is the procedure adopted by the Board in Alaska, Hawaii and Puerto Rico.

26. See, United States ex rel. Hitchcock v. Kenton, 256 F.Supp. 296 (D.Conn.1966); United States ex rel. Vance v. Kenton, 252 F.Supp. 344 (D.Conn.1966).

fusing. Cf. Phillips v. United States Board of Parole, 254 F.Supp. 529, 534 (N.D.Ill.1966). It has been subject to a variety of interpretations by different parole officers with respect to the admitted violator's rights at the time of the preliminary interview. The form merely provides, *inter alia*, that, if the parolee admits his guilt in violating the conditions of his release, "he will be returned to a federal institution where he will be afforded a revocation hearing before the Board of Parole." This provision is accepted literally by most parole officers in the field. The admitted violator is generally lodged in a local jail, awaiting federal prison designation and a revocation hearing there. He is not told that, where warranted, witnesses will be interviewed for him; he is not informed that witnesses' statements will be obtained by mail, if desired. There is no provision for a continued interview to allow the parole officer to make an "on-the-spot" investigation for the violator.

Thus the indigent violator, in practice, is deprived of an effective preliminary interview. This is contrary to the specific intent of the Board, as indicated in the memoranda noted hereinbefore, which were prepared at the time the form was designed. Form 59(a) should be promptly revised.

Therefore, the first opportunity the indigent violator has to present his case for reparole effectively is at the prison revocation hearing held some months after rearrest at a place usually far distant from home. Witnesses may no longer be available or they may refuse to travel long distances to testify; the parole officer is not available to the violator to investigate his claims; the hearing may well be reduced to a pro forma recordation of the violator's testimony, based on hearsay and supported only by his own credibility.

It is in the light of these circumstances that the Court must review the three cases before it, since each of the petitioners is an admitted violator who is indigent.

## IV

### COVEY v. KENTON, No. 11658

On March 11, 1964, Covey received a sentence of two years after being convicted of interstate transportation of forged securities. On January 11, 1965, he was placed under parole supervision in the Northern District of Texas. He absconded in October, 1965 and traveled extensively across the country. On December 7, 1965, a violator's warrant was issued after the Parole Board was notified that Covey had engaged in a series of parole violations. He was located in a state jail in New Jersey under an assumed name on June 6, 1966.

Following his release from state custody, Covey was given a preliminary interview on September 15, 1966, by a parole officer. On October 6, 1966, he was transferred to the Federal Correctional Institution at Danbury. After filing the present petition for habeas release on October 29, 1966, Covey was offered a revocation hearing at the prison on November 10, 1966. He refused the hearing because he could not obtain certain witnesses from Texas on the short notice given him and because the instant petition was pending before this Court.

The record discloses there was no prejudicial delay in this case. No local investigation in New Jersey was warranted. The opportunity to present voluntary witnesses from Texas or to obtain their statements by mail is as available now as during the period of delay.

*Accordingly, the petition of David Woodward Covey for a writ of habeas corpus is denied.* However, Covey should be given prompt notice of the next revocation hearings scheduled at the Danbury Correctional Institution so that he may have ample time to obtain evidence of a mitigating nature he claims is available.

### CHEVRETTE v. KENTON, No. 11580

Petitioner Chevrette was sentenced under the Youth Corrections Act on May 17, 1961. He was released on parole from the Federal Correctional Institution at Milan, Michigan on Septem-

ber 9, 1964. Less than two months later, he was involved in a series of crimes in Rhode Island. After pleading guilty, he was sentenced to three one year terms to run concurrently. On April 8, 1965, he was released from state confinement and was taken into custody by a United States marshal as a parole violator. During the months of April, May and early June, Chevrette, with retained counsel unsuccessfully sought to be released twice on writs of habeas corpus in the state and federal courts of Rhode Island.

During this period of time, Chevrette refused to cooperate with his federal parole officer who attempted to give him a preliminary hearing on two occasions. Removal from the State of Rhode Island was delayed so that Chevrette would be available to his counsel and the courts of that state while his habeas petitions were pending.

On June 15, 1966, Chevrette was transferred to the Federal Correctional Institution at Danbury, Connecticut. On September 21, 1966, he refused to appear for a revocation hearing because his petition for a writ of habeas corpus was before this Court.

Although there was a delay of 164 days between his arrest as a violator and the date scheduled for his revocation hearing, the record clearly discloses most of the delay was caused by the petitioner's own conduct. There is little question that he would have been processed in time for the June 6, 1966 hearings at the Danbury prison if he had not pursued other avenues of legal redress in the State of Rhode Island.

Under these circumstances, there was no prejudicial delay. The petition of Edward O. Chevrette for a writ of habeas corpus is, therefore, denied.

### OBLER v. KENTON, No. 11587

Petitioner Obler was convicted of a violation of the federal narcotic laws and was sentenced to a term of five years on February 26, 1962. He was released on parole on May 28, 1965 from the Federal Correctional Institution at Danbury, Connecticut. On April 28, 1966 he was arrested on a New York state narcotic charge with one Julio Lopez and, on June 9, 1966, he pleaded guilty and was sentenced to time served awaiting state trial of forty-two days. He thereupon surrendered himself voluntarily to his parole officer on June 29, 1966, executed Form 59(a) as an admitted violator, immediately was placed in the Marshal's custody, and, on August 19, 1966, he was returned to the Danbury institution for a revocation hearing. Eighty-four days later he was offered a hearing which he refused because his habeas corpus case was pending in this Court.

Obler at all times protested to his parole officer he was innocent of the state charge against him and contended co-defendant Lopez and other witnesses would support his claim that he should not be reincarcerated as a violator. Obler insisted he plead guilty because a "deal" was made that he would be sentenced to "time served" only. As a fourth offender, he felt the offer was too attractive to turn down.

 The record discloses Obler was given merely a perfunctory preliminary interview in New York. Because the parole officer "had a sore throat that day" only a portion of the instruction sheet side of Form 59(a) was read to him. He was neither adequately informed of his rights nor did any official attempt to interview nearby witnesses who might shed light on Obler's claims. A "time served" sentence of forty-two days for a fourth offender narcotics violator in and of itself was sufficient to warrant a local investigation concerning Obler's contentions.

Whether Obler, who faces service of the balance of his original five year term as well as a loss of over 500 days statutory good time, has been prejudiced by the delay in presenting mitigating evidence at a revocation hearing cannot be determined at this time. Lopez is an inmate at the Danbury prison and presumably is still available for testimony. Other witnesses may yet be available for personal interview or statements by mail.

 Under the circumstances, it is ordered:

1. On or before January 30, 1967, the petitioner, Louis Obler, shall be given a revocation hearing.

2. Prior to the hearing, a prison parole officer and/or some other official designated by the Board of Parole shall: a) interview the petitioner, b) prepare a summary or digest of the interview, c) make a reasonable effort to locate and interview witnesses with pertinent information or make a reasonable effort to obtain statements from witnesses by mail, d) comment as to possible reparole, and e) present a report to the designated hearing officer promptly.

3. The petitioner's writ of habeas corpus is denied, with leave to seek habeas relief if the remedial procedures herein ordered by this Court are insufficient to provide the petitioner with an effective revocation hearing.