Nicholas NUCCIO, Petitioner,

v.

Louis HEYD, Jr., Criminal Sheriff, Parish Prison, New Orleans, Louisiana, Respondent.

Misc. No. 1532–C.

United States District Court
E. D. Louisiana,
New Orleans Division.

May 19, 1969.

Milton P. Masinter, New Orleans, La., for petitioner.

Rudolph O. Vorbusch, Asst. Atty. Gen., for respondent.

RUBIN, District Judge:

Petitioner, Nicholas Nuccio, asks that a writ of habeas corpus be issued directing that he be released from state custody. On November 21, 1963, Nuccio was convicted of burglary and was sentenced to a term of ten years in the Louisiana State Penitentiary at Angola. After serving about a third of his time, Nuccio was released on parole on May 8, 1967. As a condition of his release, Nuccio was required to sign a standard Certificate of Parole form that contained, among others, the following three terms:

(4) That I will avoid injurious or vicious habits and places of disreputable or harmful character.

(5) That I will not associate with persons of bad reputation.

(8) That I will live and remain at liberty without violating the law.

Twice during his parole, Nuccio was arrested and charged with gambling under LSA-R.S. 14:90, once in Orleans Parish and once in Jefferson Parish. Each time he pleaded not guilty and was released on bond. Trials have not yet been held on these charges. In addition, Nuccio allegedly associated with one Edgar Shields who, the State asserts, is a "person of bad reputation."

Upon receiving this information the Parole Board ordered on April 8, 1969 that Nuccio be returned to the Louisiana State Penitentiary as a parole violator pending a hearing on whether he has in fact violated the terms of his parole. A hearing will be held before the Parole Board at the Louisiana State Penitentiary after Nuccio is returned to Angola.

The petitioner asserts that he has a constitutional right to bail pending the results of the Parole Board hearing. In addition he contends that the terms of parole violate the Louisiana parole statutes so that he is being detained without due process of law, and that the parole statutes themselves violate the Due Process Clause and are void for vagueness. He invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1443(1), 1443(2), the civil rights removal statutes.

Two requirements must be met in order to invoke federal district court jurisdiction under 28 U.S.C. § 1443.[1] There must exist either a civil action or a criminal prosecution in state court. Otherwise there is nothing to remove. And, in addition, it must be shown that the state court action will involve either the denial or non-enforcement of rights arising "under any law providing for the equal civil rights of citizens of the United States" or an act or refusal to perform any act "under color of authority derived from any. law providing for equal rights."

Neither condition has been met by the petitioner in this case. A Parole Board hearing is an administrative hearing. It is neither a civil action nor a criminal prosecution. Richardson v. Markley, 7 Cir. 1965, 339 F.2d 967, 969; Hyser v. Reed, en banc, 1963, 115 U.S.App.D.C. 254, 318 F.2d 225, 239. Moreover, petitioner has not asserted that he is being denied rights arising from a law providing for equal civil rights. The Supreme Court has held: "§ '1443 applies only to rights that are granted in terms of equality and not to the whole gamut of constitutional rights.'" State of Georgia v. Rachel, 1966, 384 U.S. 780, 792, 86 S.Ct. 1783,

1. 28 U.S.C. § 1443 provides:
"Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:
(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;
(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law."

16 L.Ed.2d 925. *See* City of Greenwood, Mississippi v. Peacock, 1966, 384 U.S. 808, 825, 86 S.Ct. 1800, 16 L.Ed.2d 944; Shuttlesworth v. City of Birmingham, 5 Cir. 1968, 399 F.2d 529. Therefore, even assuming arguendo that the petitioner has been denied rights arising under the Due Process Clause, his case could not properly be removed to federal court.

Nuccio's problem, however, is not simply one of improper pleading. Even if jurisdiction were invoked under 28 U.S.C. § 2254, a writ of habeas corpus would not lie, for the Parole Board has not violated any provision of the federal constitution or any federal statute in returning him to state custody.

█ "A prisoner has no constitutional right to parole. It is conferred as a matter of grace—a privilege and not a right." DiMarco v. Greene, 6 Cir. 1967, 385 F.2d 556, 563. *See* Dunn v. California Department of Corrections, 9 Cir. 1968, 401 F.2d 340; Brown v. Kearney, 5 Cir. 1966, 355 F.2d 199. Parole is not a suspension of a sentence but rather a substitution of a different form of rehabilitation. Jenkins v. Madigan, 7 Cir. 1954, 211 F.2d 904, 906. In the words of Judge Burger in Hyser v. Reed, *supra*:

> "A paroled prisoner can hardly be regarded as a 'free' man; he has already lost his freedom by due process of law and, while paroled, he is still a convicted prisoner whose tentatively assumed progress towards rehabilitation is in a sense being 'field tested.' Thus it is hardly helpful to compare his rights in that posture with his rights before he was duly convicted." 318 F. 2d at 235.

█ While at large on parole, Nuccio was in effect in "constructive custody." Baumhoff v. United States, 10 Cir. 1952, 200 F.2d 769, 770. And, when he allegedly violated his parole, the legal fiction became a reality with real bars replacing the probation office. For under Louisiana law, when the Parole Board, or, in some instances, a parole officer, has rea-

sonable cause to believe that a parolee has violated his parole, the parolee can be retaken to the institution from which he was paroled pending a hearing on whether his parole should be revoked. LSA-R. S. 15:574.7, 574.8, 574.9.

█ Nuccio has no constitutional right to bail pending his hearing on the revocation of his parole. Marchand v. Director, United States Probation Office, D.Mass., 1969, 296 F.Supp. 532, 534. As long as the Parole Board's actions are not "arbitrary or capricious,"[2] the Board may reassert physical control over him and return him to custody. *See* Sartain v. Pitchess, 9 Cir. 1966, 368 F.2d 806, 807. *But see*, Hyser v. Reed, *supra*, Judge Wright's opinion, 318 F.2d at 261. Paroling prisoners is a way to give them a chance to demonstrate their ability to live in society in accordance with its laws, with the supportive assistance of the parole officer. In many instances, this is an experiment on the prisoner's behalf, with his welfare in mind. If such benign efforts are to be encouraged, a considerable degree of latitude should be afforded in determining the success or failure of the experiment. Anyone familiar with administrative behavior patterns will recognize that the greater the formality that must attend the revocation of parole, the more cautious public officials will be in granting it.

█ It is not essential that a parole hearing be held in the locale where the parole violation allegedly occurred. While it might be neither fair nor reasonable to hold a parole revocation hearing hundreds of miles from the scene of the parole violation,[3] the hearing in this case suffers no such defect. The Parole Board meets at the Louisiana State Penitentiary at Angola which is less than 150 miles from Orleans and Jefferson Parishes, the sites of the gambling charges. At Angola the full prison staff is available to aid the Parole Board in its inquiry. No undue hardship, certainly not enough to be so arbitrary and capri-

---

2. *See* Dunn v. California Department of Corrections, 9 Cir. 1968, 401 F.2d 340, 342.

3. *Cf.* Hyser v. Reed, en banc, 1963, 115 U.S.App.D.C. 254, 318 F.2d 225.

cious as to violate the Due Process Clause, will result from a hearing held at Angola.

Finally, Nuccio asserts that the Louisiana conditions of parole are unconstitutional and that, if his parole is revoked for breaking these conditions, his rights under the Due Process Clause will have been violated. If this claim has any merit, however,[4] it is premature. Nuccio's parole has not yet been revoked. Under Louisiana law[5] a hearing will be held within 30 days after his return to Angola. At the hearing, he has the right to be represented by counsel and to call and confront witnesses.[6] Even if parole violations are found, the Board has the power to excuse them. LSA-R.S. 15:574.9, subd. B(1).

"Petitioner has not yet been found to be a parole violator, and it should not be assumed that petitioner's rights will not be adequately protected in the parole revocation proceeding. * * * It is for the Board of Parole in the first instance to determine if cause exists for revocation of petitioner's parole." Davis v. United States, W.D.Mo.,1968, 288 F. Supp. 180, 181. Before Nuccio can assert that the Louisiana conditions of parole violate rights guaranteed to him under the Due Process Clause, he must first exhaust his available state remedies.

Williams v. Wainwright, 5 Cir. 1969, 410 F.2d 144; Spencer v. Wainwright, 5 Cir. 1968, 403 F.2d 778; Boyer v. City of Orlando, 5 Cir. 1968, 402 F.2d 966.

The petition for a writ of habeas corpus is therefore

Dismissed.

---

4. In Sartain v. Pitchess, *supra*, the Ninth Circuit pointed out: "In California, an official accusation of crime while one is on parole is, in and of itself, proper ground for suspending parole." In Dunn v. California Department of Corrections, *supra*, the same court noted that Parole Board actions may not be "arbitrary or capricious."

5. LSA–R.S. 15:574.9, provides:
"A. When a parolee has been returned to the institution from which he was paroled the board shall hold a hearing within thirty days of his return to determine whether his parole should be revoked unless said hearing is waived expressly in writing by the parolee. The parolee shall have reasonable notice of the charges filed. The staff of the board shall assist the parolee in presentation and preparation of his case for the hearing. The parolee also shall be permitted to con-

sult with and be advised and represented by his own legal counsel. At the hearing the parolee may admit, deny, or explain the violation charged, and he may present proof, including affidavits and other evidence, in support of his contentions."

6. Louisiana should be commended for its parole revocation procedures. The court has not found any cases that have held that representation of counsel, confrontation of witnesses, or even a revocation hearing itself are constitutionally required. See *generally*, Escoe v. Zerbst, 1935, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566; Dunn v. California Department of Corrections, *supra*; Hyser v. Reed, *supra*; United States ex rel. Obler v. Kenton, D.Conn., 1967, 262 F. Supp. 205, 208. *But see*, Hyser v. Reed, *supra* (partially concurring and dissenting opinions of Judges Bazelon, Edgerton, Fahy, and Wright.)