**UNITED STATES of America ex rel. Charles J. HITCHCOCK, Petitioner,**

**v.**

**Frank F. KENTON, Warden, Federal Correctional Institution, Danbury, Connecticut, Respondent.**

**Civ. No. 11405.**

United States District Court
D. Connecticut.

June 13, 1966.

delay in providing a parole revocation hearing to a parolee retaken upon a warrant issued by the Board of Parole pursuant to 18 U.S.C. § 4207. See, e. g., United States ex rel. Buono v. Kenton, 287 F.2d 534, 535–536 (2 Cir. 1961), cert. denied, 368 U.S. 846, 82 S.Ct. 75, 7 L.Ed.2d 44 (1961) (113 day delay unreasonable); United States ex rel. Vance v. Kenton, 252 F.Supp. 344, 347 (D.Conn. 1966) (123 day delay unreasonable). It is undisputed in the instant case that petitioner has been held for 141 days between the date he was retaken by the federal authorities on a parole violator's warrant and the date he was first scheduled for a parole revocation hearing; and the latter was scheduled only after this Court had issued an order requiring respondent to show cause why the instant petition for a writ of habeas corpus should not be granted.

Petitioner is presently incarcerated as an alleged parole violator at the Federal Correctional Institution, Danbury, Connecticut. His petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, alleges that he is being held in illegal custody for the reasons (1) that the 141 day delay in granting him a statutory hearing on the issue of violation is an unreasonable delay, and (2) that the perfunctory hearing tendered after this Court issued its order to show cause was not a fair hearing sufficient to satisfy the requirements of the statute in that petitioner was not given a fair opportunity to present countervailing and mitigating evidence and no determination in fact was made by the Board whether petitioner was still a good parole risk.

The petition for a writ of habeas corpus, dated April 13, 1966, was received by this Court April 15, 1966. In response to the Court's order to show cause issued April 21, 1966, respondent filed its answer May 2, 1966. The Court thereupon entered an order May 6, 1966 directing that a hearing be held May 16, 1966 at which petitioner and respondent, each represented by counsel, might be heard and at which the Court would receive

Stephen E. Ronai, Milford, Conn., for petitioner.

Samuel J. Heyman, Asst. U. S. Atty., New Haven, Conn., for respondent.

TIMBERS, Chief Judge.

This is another in a series of cases which disclose—with far more frequency, at least in this District, than is consistent with inadvertence—an unreasonable

evidence relevant to the issues presented. Stephen E. Ronai, Esq., a member of the bar of this Court, was assigned as court appointed counsel to represent petitioner. At the May 16, 1966 hearing, witnesses were called and exhibits were offered by both sides. Petitioner, who was present, testified on his own behalf. Briefs have now been submitted by both sides.

Based on the entire record, the Court makes the following findings of fact (all of which are undisputed unless otherwise indicated) and conclusions of law.

### FINDINGS OF FACT

(1) Petitioner was sentenced May 21, 1963 in the Eastern District of Pennsylvania, pursuant to 18 U.S.C. § 4208 (b), to a five year term of imprisonment for impersonating a member of the armed forces in violation of 18 U.S.C. §§ 499 and 701. On October 10, 1963 he was resentenced to three years imprisonment on one count, to be followed by three years probation on the other count.

(2) Petitioner was given a mandatory release August 14, 1965 and placed on parole. At that time he had earned 280 days of good time.

(3) On October 22, 1965 petitioner was arrested by local police in Albany, New York, and charged with vagrancy, theft of blank checks from his employer and forging and uttering the checks totalling $140. These charges were disposed of on December 3, 1965, at which time petitioner, upon his plea of guilty to petty larceny, was given a one year suspended sentence by the Albany Police Court.

(4) Petitioner's federal parole officer in the Northern District of New York, under whose supervision he had been since his mandatory release in August, visited petitioner in the Albany County Jail on November 2, 1965. At that time petitioner orally admitted to the parole officer that he had stolen, forged and uttered the checks; this was confirmed in a signed statement given to the parole officer on December 7, 1965.

(5) On November 16, 1965 a parole violator's warrant was issued for petitioner charging that he had committed forgery in the second degree. This warrant was executed December 7, 1965, at which time petitioner was turned over to federal authorities.

(6) At an interview on December 7, 1965 between petitioner and his federal parole officer in Albany, the subject of a "local parole revocation hearing before the parole officer", as contrasted with a "full hearing before a member of the Board of Parole at the prison", was discussed. The parole officer was not called as a witness at the instant habeas corpus hearing; so we have only petitioner's version of this conversation, which at best is confusing. The record, however, supports, and the Court finds, the following understanding on the part of petitioner which emerged from this conversation, so far as is here relevant: that, having admitted his conviction of a crime while on parole, his only alternative was a revocation hearing by the Board of Parole upon his return to prison; that, according to petitioner's parole officer, it would speed up the process if petitioner waived a local revocation hearing in Albany since he would have a full hearing within 30 to 90 days before the Board of Parole at the prison; and the parole officer assured petitioner in the meanwhile that he would write to the sentencing judge in the Eastern District of Pennsylvania requesting a redetermination of petitioner's future probation status. Petitioner accordingly executed a Parole Form 59a, Attorney-Witness Election Form, before the parole officer on December 7, 1965 (Respondent's Ex. B).

(7) Petitioner was removed to the Federal Correctional Institution at Danbury on December 22, 1965. Why it required 15 days to get him from Albany to Danbury, does not appear.

(8) Upon arrival at the FCI on December 22, 1965, petitioner was given a Sentence Notice (Petitioner's Ex. 1) informing him that he had been "sentenced" for parole violation on December 12, 1965 to serve 280 days (the full good time credit he had earned upon his mandatory release in August 1965); that

his "full term" would expire September 17, 1966; and his "good conduct term" would expire July 15, 1966, with 64 days of good time allowed. At the habeas corpus hearing, a parole officer from the FCI testified that petitioner's release date has been advanced to July 2, 1966 as a result of industrial good time earned; and that it could be still further advanced—from 5 to 25 days—by means of a "lump sum award" if recommended by petitioner's supervisor.

(9) When petitioner first arrived at the FCI on December 22, 1965, he was assigned to parole officer John P. Waters and remained under his supervision until about January 15, 1966 when parole officer James Mabray took over petitioner's supervision. Just what took place during the Waters period of supervision (December 22, 1965 to January 15, 1966) is not clear. Waters was not called as a witness at the habeas corpus hearing. Mabray did testify that during this period petitioner's folder became "lost in the shuffle" and that the clerical error referred to below (paragraph 11, infra) would not have occurred if one parole officer had been in charge of petitioner throughout. Mabray also testified that parole revocation hearings were held by the Board of Parole at the FCI during December 1965 and after petitioner's arrival. Why petitioner was not granted a revocation hearing at the FCI during December 1965, does not appear.

(10) Sometime between January 15 and January 31, 1966, Mabray informed petitioner he would be given a hearing in March. Again early in March Mabray informed petitioner he would have a hearing toward the end of March. Each time Mabray advised petitioner of his rights and privileges in connection with a revocation hearing, including his right to counsel and his right to call witnesses.

(11) The Board of Parole did hold parole revocation hearings at the FCI on March 18, 28, 29 and 30. Due to a clerical error on the part of a civil service clerk in Mabray's office at the FCI, petitioner's name was not included on the list of those scheduled for hearings in March and petitioner was not given a hearing in March.

(12) Upon discovery of this error, Mabray called petitioner to his office about April 14, 1966 and explained that he had not been given a hearing in March because someone had "goofed" in Mabray's office. Mabray suggested that petitioner execute certain forms for a hearing in June when the Board of Parole would hold its next hearings at the FCI. Petitioner expressed reluctance because his petition for a writ of habeas corpus (dated April 13, 1966) had been sent to the Court. The forms tendered by Mabray were not executed by petitioner.

(13) On April 27, 1966—six days after this Court had issued its order requiring respondent to show cause why the instant petition for a writ of habeas corpus should not be granted—the Board of Parole held a special emergency parole revocation hearing at the FCI to determine whether petitioner's parole should be revoked. An analyst employed by the Board, Joseph N. Pokinski, was sent up from Washington, D. C., designated as the hearing examiner for this case. Such an emergency hearing, according to Mabray, is unusual; most revocation hearings are conducted by a member of the Board. Petitioner appeared before the examiner. A transcript of a little over three typewritten pages was made (Respondent's Ex. C). No other witnesses testified. No exhibits were marked.

(14) The upshot of the April 27, 1966 hearing was that the examiner informed petitioner that he was entitled to a lawyer and "voluntary witnesses provided that you can produce them"; and that a postponement of the hearing would be granted to enable petitioner to produce a lawyer and witnesses. Petitioner showed the examiner a copy of this Court's order to show cause of April 21, 1966 and stated, "It is in the hands of the Court and will have to be left to the decision of the Court. I don't wish to seem rude but in view of the situation I can't say any more because I don't want to be in conflict with Judge Timbers. I believe you can understand the position I am in."

(15) At one point during the hearing, the examiner said, "Let me make this particular statement, you had written to the Court that you did not have a revocation hearing. I am sure that you have access to the Prisoner Mail Box since you have written to the Court. Could you please tell us why you did not write a letter via the Prisoner Mail Box to the Parole Executive and/or the Chairman of the U. S. Board of Parole?" Petitioner replied, "When I entered this Institution, I was informed that I would have a hearing in March. I felt that was all that was necessary. I awaited it and it wasn't forthcoming. What could I do about it?"

(16) The examiner concluded, "Well Hitchcock, unless you want to proceed further with this hearing and if you do not wish to proceed further, I will have to note in the record and so inform the Board and ask them to make some sort of a decision in reference to your case." Petitioner replied, "Not to interrupt you but I wish the record to show in view of the fact that Judge Timbers had issued this order on April 21st that I chose to remain silent."

(17) At the habeas corpus hearing the examiner testified that the Board of Parole on April 29, 1966 revoked petitioner's mandatory release on the ground that he had committed a crime while on parole; but, according to the examiner, the Board made no determination whether petitioner was a good parole risk and the examiner made no recommendation to the Board in that regard. The examiner acknowledged at the habeas corpus hearing that the fact of a criminal conviction while on parole is not alone conclusive upon whether parole should be revoked.

(18) Petitioner made a showing at the habeas corpus hearing of certain witnesses who he believed would have been available when he was first turned over to the federal authorities in December 1965 —witnesses familiar with petitioner's reputation in the Albany area during the period between his mandatory release in August 1965 and his arrest in October

1965 and therefore in a position to testify upon the issue of whether petitioner was a good parole risk. These witnesses were: Msgr. McGinn, petitioner's parish priest in Albany; Father Hartigan, successor to Msgr. McGinn and a boyhood acquaintance of Hitchcock; petitioner's mother (afflicted with a rheumatic heart condition); and petitioner's father (recovering from an automobile accident). There was also some indication that the employer from whom petitioner stole the checks wished to be helpful; he appeared in the Albany Police Court on petitioner's behalf. Such evidence was no longer available to petitioner by the time the Board scheduled a parole revocation hearing almost five months later.

## CONCLUSIONS OF LAW

(1) This Court has jurisdiction pursuant to 28 U.S.C. § 2241.

■ (2) The 141 day delay by the Board of Parole in granting petitioner a statutory hearing on the issue of violation was an unreasonable delay. United States ex rel. Buono v. Kenton, 287 F.2d 534, 535–536 (2 Cir. 1961), cert. denied, 368 U.S. 846, 82 S.Ct. 75, 7 L.Ed.2d 44 (1961); United States ex rel. Vance v. Kenton, 252 F.Supp. 344, 347 (D.Conn. 1966).

■ (3) The perfunctory hearing tendered by the Board of Parole on April 27, 1966 after this Court issued its order to show cause was not a fair hearing sufficient to satisfy the requirements of the statute, for the reasons that

(a) Petitioner was not given a fair opportunity to present countervailing and mitigating evidence.

(b) Sources of evidence available to petitioner when he was first retaken upon the warrant issued by the Board of Parole were no longer available after the delay of nearly five months.

(c) The improvised emergency hearing, obviously called for the dubious purpose of attempting to defeat petitioner's habeas corpus proceeding in his Court, caused

an understandable inhibition on the part of petitioner with respect to his participation in the hearing.

(d) Revocation by the Board of Parole of petitioner's mandatory release on the sole ground that he had committed a crime while on parole, without making a determination whether petitioner was a good parole risk, alone vitiates the fairness of the hearing and the Board's determination. United States ex rel. Vance v. Kenton, supra at 346.

■ (4) The statutory hearing required by 18 U.S.C. § 4207 has been denied to petitioner because of the unreasonable delay and because of the failure to provide an effective hearing. United States ex rel. Buono v. Kenton, supra at 536.

■ (5) Petitioner is being illegally detained and is entitled to be discharged pursuant to the terms of the order entered herewith.

---

The Court is grateful to Stephen E. Ronai, Esq., a member of the bar of this Court, who served without fee as court appointed counsel for petitioner in this habeas corpus proceeding. His conduct throughout, including his participation at the hearing and his excellent brief, are in keeping with the very highest standards of the profession. The Court trusts that the day is not far off when Congress will recognize the wisdom of providing compensation and reimbursement of expenses for court appointed counsel in habeas corpus proceedings, as it has done in criminal proceedings pursuant to the Criminal Justice Act.

---

### ORDER ON PAROLE VIOLATOR'S PETITION FOR WRIT OF HABEAS CORPUS

Pursuant to this Court's Memorandum of Decision dated June 13, 1966 herein, it is

Ordered that the petition for writ of habeas corpus dated April 13, 1966, be, and the same hereby is, granted to the extent hereinafter provided; and it is further

Ordered that petitioner, Charles J. Hitchcock, be, and he hereby is, discharged from the custody of the Attorney General or his authorized representative on June 15, 1966 at 12:00 o'clock noon, unless before that time the Attorney General or his authorized representative has restored petitioner to the same circumstances and conditions of release on parole as existed on December 7, 1965, as if the cause of his return and reincarceration had not occurred, and provided, furthermore, that petitioner be credited upon his record with time in confinement from December 7, 1965 to the date of his release herein ordered, together with statutory and industrial good time to his credit; and it is further

Ordered that execution of this order be, and the same hereby is, stayed until June 20, 1966 at 4:00 P.M. to permit respondent, if he is so advised, to appeal this order to the United States Court of Appeals for the Second Circuit and to apply to the Court of Appeals for a further stay pending appeal.