Francis Anthony AGRESTI, Petitioner,

v.

Jacob J. PARKER, Warden, United States
Penitentiary, Lewisburg, Pennsyl-
vania, Respondent.

Habeas Corpus No. 915.

United States District Court

M. D. Pennsylvania.

June 21, 1968.

H. Thomas Sisk, Washington, D. C., James F. McClure, Jr., Lewisburg, Pa., for petitioner.

Bernard J. Brown, U. S. Atty., Scranton, Pa., Harry A. Nagle, Asst. U. S. Atty., Lewisburg, Pa., for respondent.

## OPINION

FOLLMER, District Judge.

Francis Anthony Agresti, an inmate at the United States Penitentiary, Lewisburg, filed in this court a petition for a writ of habeas corpus on November 1, 1967. On November 3, 1967, the court issued a Rule on the warden of the said penitentiary to show cause why the writ should not be granted. A response and traverse were filed and a hearing was held before the court, at which petitioner was present and testified. In addition, both sides have submitted additional briefs.

At the hearing counsel for petitioner presented, in substance, the narrow issue of whether the parole hearing held on September 13, 1967, was sufficiently timely to afford petitioner due process of law.

Petitioner was confined in the Lewisburg Penitentiary on a five year sentence beginning March 2, 1962. After serving a part of that sentence, he was granted a mandatory release for statutory and earned good time on August 2, 1965. The release conditions were that petitioner was to remain under the jurisdiction of the United States Board of Parole, as if on parole, until the expiration of his maximum term of sentence, less one hundred and eighty days, or until September 2, 1966. Petitioner's maximum term of sentence would have expired on March 2, 1967.

The violator's warrant, which was introduced into evidence, shows that petitioner was thereafter arrested in Maryland by the Maryland authorities on or about March 31, 1966, and charged with being an accessory to an armed robbery that occurred on March 27, 1966. The warrant application shows that the United States Board of Parole had listed two reasons for revoking petitioner's release. They were: (1) he was then charged with armed robbery in the State of Maryland, and (2) petitioner had associated with known felons.

The warrant was lodged against petitioner while he was under the supervision of the Maryland authorities and was used as a detainer. The record also shows that petitioner was constantly under arrest by the Maryland authorities from March 31, 1966, until August 16, 1967, when he placed bond with the Maryland authorities and was released to the federal authorities. At that time the mandatory release warrant of the United States Board of Parole was executed by the arrest of petitioner. The following day he was afforded a preliminary interview by Probation Officer Kidder. After consulting with his attorney, he checked the block on the Board of Parole form indicating he had been convicted of the crime and did not wish a local revocation hearing. He was then transferred from Baltimore City Jail to the United States Penitentiary, Lewisburg, Pennsylvania, where he remains a prisoner. After his arrival at the penitentiary, on September 13, 1967, petitioner was afforded a revocation hearing. At that time he executed an Attorney-Witness Election Form stating that he wished to waive representation by counsel and the testimony of witnesses.

Subsequent to his arrest, the petitioner was indicted on several charges in Maryland, two of which were being an

accessory to an armed robbery and armed robbery. At trial, he was found guilty. Later on appeal, the judgment of conviction was reversed without remand.

At the hearing before this court, Mr. Shore of the United States Board of Parole testified that in petitioner's case the Board of Parole had a right to hold a hearing immediately upon his arrest by the State of Maryland authorities, but the Board elected not to do so and instead used the violator's warrant as a detainer. He stated further that the Board elected to rely on the fact that they believed that petitioner would be found guilty of the charges pending against him in Maryland and that the parole would then be automatically revoked. Obviously, for that reason, the Board did not grant a reasonably prompt hearing close to the place of the parole violation on the second ground for revoking petitioner's parole, associating with known felons.

Petitioner does not contend that the violation warrant was not timely issued.

Petitioner correctly states the question presented to the court as follows:

When a probationer is arrested after release and the United States Probation Office cites him for a violation of his release agreement, and in such citation charges him with violating the law as well as violating the terms of his release (not necessarily a violation of the law), and the United States Probation Office refuses to grant a hearing on the non-law violation and instead waits for a determination of the law violation, and some seventeen months later the probationer is found not guilty of the law violation, may the United States Probation Office then contend it was not required to grant a reasonably prompt hearing on the alleged violation of the terms of the probation agreement?

According to Mr. Shore's testimony, the Board of Parole had a right to hold a hearing immediately upon petitioner's arrest by the State of Maryland authorities, but the Board elected not to do so and instead used the violator's warrant as a detainer. Had the verdict of guilty in petitioner's case in the Maryland courts been sustained on appeal, the revocation of parole would have been automatic. In this case the Parole Board simply guessed wrong. Apparently the Board felt that the conviction would certainly be sustained and they refused a prompt hearing. The government argued that even though the Board did not grant a prompt hearing it should still be upheld in the revocation of the parole because the facts elicited at petitioner's trial in Maryland show that he was really guilty of a crime, but through inadvertent pleading by the State of Maryland, he was not convicted. This argument is not convincing.

In a concurring opinion, Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225, 249 (1963), it is stated:

B. If the parolee denies the violation and has not been validly convicted of a crime which constitutes the violation, he must be given a suitable hearing to determine whether the violation occurred. * * *

In a group of cases involving the administrative process of the United States Board of Parole or the District of Columbia Board of Parole, the same Court of Appeals stated:

2. Where a warrant is timely issued charging a parolee with violating the terms and conditions of his release by misconduct other than the commission of a crime, the Board is obligated to hold a prompt hearing on the fact of violation even though the Board's jurisdiction survives intervening service of an unrelated criminal sentence. Where the parolee is prejudiced by the Board's failure to hold a prompt hearing, the parolee is entitled to an order of unconditional release. Boswell v. United States Board of Parole, No. 20681, infra. 388 F.2d 567, 570 (1967).

In the Boswell memorandum (Id. at 573), the court said:

> \* \* \* The entire thrust of our Hyser opinion is accommodation of the flexibility necessarily required for the administration of the parole system with concepts of elemental fairness to those under the Board's jurisdiction. And, as we made clear, one of the requirements of basic fairness is a prompt hearing where the alleged violator can contest the fact of violation and adduce whatever witnesses or evidence he may have to support his claim of innocence.

Appellees do not suggest that they may unreasonably delay in taking action on a timely violator warrant. Rather, it is their position that 'a warrant issued within the maximum term of the original sentence may be executed after the parole violator has served a second sentence imposed while he was on parole.' But the cases which appellees cite all concern the situation we faced in Shelton v. United States Board of Parole, No. 20591, supra, where we reaffirmed our view that the Board may reasonably await the outcome of pending criminal proceedings where its violator warrant charges that criminal offense as the reason for revocation. Since there is no need to hold a revocation hearing at all in such cases—the violation being established by the criminal conviction—there can be no prejudice to the parolee in regard to determining the fact of violation by awaiting the outcome of criminal proceedings, and there may be an advantage, as appellees suggest, in leaving 'the determination of guilt or innocence \* \* \* to the courts (rather) than to an informal Board hearing.' But here the Board's warrant did not charge the auto transportation as the act constituting the violation of parole. Where there is confinement for a charge that is not alleged as a ground for revocation of parole it is not per se reasonable to defer determination of whether there has been a violation of parole pending the completion of the unrelated criminal proceedings. If the Board intended to pursue the charge that the parole board's order had been violated by failure to report, there is at least an issue whether it was reasonable to delay this determination for two and a half years merely because the parolee was in confinement on an unrelated Dyer Act charge.

■ As above indicated, the violation warrant here was timely issued. The Board certainly should have anticipated the possibility of an acquittal on the state charge and concluded that it would be wiser "to hold a preliminary interview 'as promptly as is convenient after the arrest while the information is likely to be fresh and the sources are available.'" 388 F.2d at 573. Here the Parole Board deliberately took a calculated risk and lost.

It cannot be said that petitioner received a reasonably prompt hearing close to the scene of the alleged violation when he did not receive a hearing until seventeen months later in Pennsylvania instead of Maryland.

However, petitioner must also show that he was prejudiced by the delay in the holding of his revocation hearing. In the court's memorandum of the Shelton and Boswell cases it is stated, *"Where the parolee is prejudiced by the Board's failure to hold a prompt hearing,* the parolee is entitled to an order of unconditional release." 388 F.2d at 570. (Emphasis supplied.)

■ Petitioner contends that he is entitled as a matter of law to a finding that the seventeen months delay in granting a hearing was prejudicial. In Boswell, supra, the court stated, "[D]elay will not in and of itself suffice to show prejudice, except in an extreme case, and actual prejudice vel non is the focal point of the inquiry."

As examples of extreme cases where prejudice was presumed, the court in Boswell cited United States v. Gernie, 228 F.Supp. 329 (S.D.N.Y.1964), where

the delay was eleven years, and United States ex rel. Howard v. Ragen, 59 F. Supp. 374 (N.D.Ill.1945), where the delay was fourteen years. In the Boswell case, the hearing was delayed for two and a half years and a potential witness had died, yet the court found this sufficient only to preclude summary judgment and warrant further inquiry.

■ It therefore cannot be stated that the delay of seventeen months in granting petitioner a revocation hearing was prejudicial as a matter of law.

■ Petitioner also contends that the delay caused him to suffer actual prejudice. In United States ex rel. Obler v. Kenton, 262 F.Supp. 205 (1967), the United States District Court for the District of Connecticut considered the rationale to be used in deciding this question. It stated:

> No mechanical test is dispositive. As with the claim of a deprivation of the right to a speedy trial, whether there has been a deprivation of the right to a revocation hearing within a reasonable time depends upon all the circumstances of the case. A long delay in and of itself is but one element, albeit a forceful one, to be considered. Timely objection to the delay, unavailability of witnesses, lost sources of mitigating evidence, the violator's own conduct as a contributing cause of the delay, and the Parole Board's reasons for the delay are factors which also must weigh in the balance. Id. at 209.

■ The court in Obler further stated that the opportunity for petitioner to present voluntary witnesses or to obtain their statements by mail was as available at the time of the decision as during the period of delay and therefore held the delay nonprejudicial. In United States ex rel. Boulet v. Kenton, 271 F. Supp. 977 (1967), the same court found the delay unreasonable but held that it did not prejudice the petitioner because written statements of the proposed witnesses could be submitted.

At the hearing held in the instant case, Joseph N. Shore, Parole Executive of the United States Board of Parole, testified that it is not necessary that witnesses appear in person and that the Board does accept the written statements of witnesses. (Page 110 of transcript).

Petitioner avers that because of the long delay he was unable to produce testimony to show that he did not associate with known felons or that he did so with the knowledge and approval of Mr. Kidder, one of the Board's parole officers.

At the hearing Mr. Kidder testified that he recalled a conversation between petitioner, a Mr. Garner who was petitioner's attorney, and himself. However, he stated that he did not remember either of these gentlemen informing him of petitioner's association with a known felon, one James Killgore. (Pages 47–48, 56–60 of transcript.) He stated that had he been given such information he would have remembered it, (Page 48 of transcript) and that he is positive Mr. Agresti made no mention of the fact that Killgore was working for him.

In view of the conflict between the testimony of petitioner and that of Mr. Kidder, the testimony of Mr. Garner might have proved of considerable value to petitioner's cause. However, petitioner did not call Garner as a witness, he did not offer his affidavit, and he did not offer any explanation as to why neither of these things was done.

Petitioner testified that if he had been given a prompt hearing by the Parole Board he could have produced many witnesses to explain his association with Killgore, (Pages 31–41 of transcript), but that these witnesses were no longer available. However, he failed to show that he attempted to contact these people or to secure their written statements. Petitioner has therefore failed to prove that he suffered actual prejudice from the delay in his revocation hearing.

Petitioner's mandatory release was revoked because of his association with a known felon. The association is con-

firmed by petitioner's own testimony at his trial in Maryland.[1]

In view of petitioner's violation of the conditions of his release, and his failure to show that he suffered actual prejudice from the delay in his revocation hearing, his petition for a writ of habeas corpus will be denied.

1. Petitioner's testimony at the trial is set out in petitioner's Exhibit No. 2; petitioner's counsel stated at the hearing (Page 22 of transcript) that he would supply the court with a copy of the trial transcript but has failed to do so.