**John JENKINS**

**v.**

**UNITED STATES of America.**

**Civ. No. 14562.**

United States District Court,
D. Connecticut.

Feb. 2, 1972.

John Jenkins, pro se.

Stewart H. Jones, U. S. Atty., Barry J. Cutler, Asst. U. S. Atty., New Haven, Conn., for respondent.

## MEMORANDUM OF DECISION

ZAMPANO, District Judge.

Petitioner, an inmate at the Federal Correctional Institution, Danbury, Connecticut, seeks habeas corpus relief on several grounds, all related to the revocation of his parole.

The facts are rather complex. In May 1968, petitioner was sentenced by the District Court for the District of Columbia to a term of 10 years under Title II of the Narcotic Addict Rehabilitation Act, 18 U.S.C. § 4253, for the offense of housebreaking, and was confined at the Federal Correctional Institution, Danbury, Connecticut. Thereafter, he was transferred to a half-way house in the District of Columbia. On March 18, 1970, he was arrested in the District of Columbia for vending without a license and carrying a dangerous weapon (a loaded .38 caliber revolver). On April 1, 1970, the Parole Board issued an arrest warrant for petitioner, charging him with a narcotics violation in addition to the gun offense for which he was arrested. During the following months he was unable to post bond on the criminal charges and therefore was confined in jail. Consequently, the parole violation warrant was not executed until September 3, 1970, after the criminal charges had been dropped. Petitioner, however, continued to be confined in the District of Columbia jail under the parole violation warrant.

On September 11, 1970, a probation officer conducted a preliminary interview of petitioner at the jail. Petitioner executed Parole Form 59a, indicating thereon that he violated one or more of the conditions of his parole, and requesting a postponement of the interview in order to secure an attorney and witnesses. It does not appear from the record that any further action was taken until late October.

Sometime during this period, or earlier, petitioner applied to the District Court for the District of Columbia for a writ of habeas corpus attacking the legality of the delay and seeking a hearing on the parole violation charges. Although petitioner claims this application was filed on November 9, 1970, the records of that court indicate that it was dismissed on October 6, 1970, pursuant to an order of the court.

On October 21, 1970, petitioner wrote to the probation officer asking him to disregard his request to have a local revocation hearing, and asking to be transferred to Danbury where he would be "better off." Shortly thereafter, on October 28, the probation officer relayed the request to the Parole Board. According to the government, "under ordinary circumstances" petitioner would have been returned to Danbury in November 1970, where he would have received a hearing during that month. However, for reasons yet unexplained, it was not until March 16, 1971, that petitioner finally was transferred to Danbury. He executed a form, petitioning this

Court to assign counsel to represent him at his parole revocation hearing, since he was himself unable to hire counsel. During this time the Court was in the process of devising a plan for representation of indigent prisoners at parole revocation hearings under the new revisions to the Criminal Justice Act, 18 U.S.C. § 3006A(g), and counsel for petitioner was appointed by a magistrate on May 28, 1971—the first or one of the first parole revocation cases in which court-appointed counsel appeared.

While awaiting appointment of counsel, on April 15, 1971, petitioner applied again to the District Court for the District of Columbia for a writ of habeas corpus, attacking the delay in his parole revocation hearing. On April 22, 1971, that court ordered the government to respond within 60 days, and on June 11, 1971, the government filed a motion to transfer the petition to the District Court for the District of Connecticut, which was granted on July 2, 1971. This Court issued a show cause order, to which the government responded suggesting that petitioner's claim was moot since a parole revocation hearing had taken place at Danbury in July, pursuant to which the Board revoked parole on August 17, 1971. This Court issued a second show cause order, and petitioner and the government filed additional memoranda.

It appears to the Court from petitioner's numerous pro se filings that he has essentially three claims: 1) that the delay in holding his revocation hearing was so unreasonably long that he is entitled to unconditional release; 2) that in any event he was prejudiced at the hearing which was eventually held; and 3) that the assistance of counsel at the hearing was inadequate.

*Unreasonable delay.* The government suggests that the delay was caused in substantial part by petitioner's own actions. However, it does not appear that petitioner ever obstructed any attempt to schedule a hearing, nor that he was ever unavailable. Rather, he continuously sought a hearing for over 15 months. The only actions of petitioner which could be said to have contributed to the delay were: 1) his initial request for a postponement of the preliminary interview in order to secure counsel and witnesses, a postponement limited by Parole Board rules to 30 days; 2) his attempts, through habeas corpus applications, to end the delay; 3) his request for counsel to represent him at the hearing. Even if delay resulting from these efforts were chargeable to him, they do not account for a substantial part of the overall delay.

 There is no doubt that the delay was unreasonable, whether it is treated as a 15 month delay from the date of the issuance of the parole violation warrant, Shelton v. United States Board of Parole, 128 U.S.App.D.C. 311, 388 F.2d 567, 574 (1967), Agresti v. Parker, 285 F.Supp. 893 (D.C.Pa.1968), or as a 10 month delay from the date of its execution, United States ex rel. Boulet v. Kenton, 271 F.Supp. 977 (D.Conn. 1967), United States ex rel. Obler v. Kenton, 262 F.Supp. 205 (D.Conn.1967), United States ex rel. Hitchcock v. Kenton, 256 F.Supp. 296 (D.Conn.1966). It does not follow, however, that petitioner is entitled to an order of release. Whatever may have been the lawfulness of his custody after it became unreasonably long, it was rendered lawful by the hearing which was held eventually, provided the hearing was valid in all respects. Cotner v. United States, 409 F.2d 853 (10 Cir. 1969), Weaver v. Markley, 332 F.2d 34 (7 Cir. 1964), United States ex rel. Buono v. Kenton, 287 F.2d 534 (2 Cir.), cert. denied, 368 U.S. 846, 82 S.Ct. 75, 7 L.Ed.2d 44 (1961). This is so because even if petitioner were granted an order of release, it apparently is within the power of the Parole Board to issue and execute a new warrant and revoke parole after a subsequent proper hearing. *Buono*, supra, at 537. It is settled law that a parolee must show actual prejudice resulting from an unreasonable delay in holding a revocation hearing. *Shelton, Buono, Agresti*, supra. In the absence of prejudice, an order for

release is issued only when no hearing is held. United States ex rel. Vance v. Kenton, 252 F.Supp. 344 (D.Conn.1966).

*Prejudice.* It is clear that if petitioner can show that the Parole Board's unreasonable delay prejudiced his ability to present his case at the revocation hearing, he is entitled to release. Petitioner now strenuously denies violating his parole, but he has neither referred to nor explained his signature on Parole Form 59a, annexed by the government to its response, which shows on its face that he admitted violating one or more conditions of his release. Although this form does not indicate whether the charge he admitted was the use of narcotics or carrying a dangerous weapon, or both, the report submitted by the probation officer who presented the form to petitioner states that petitioner admitted the former charge and denied the latter. According to that report, petitioner argued that his narcotics use was insufficient cause for parole revocation because others who were known drug users were allowed to continue on parole. Drug use, however, is a clear violation of parole, Esquivel v. United States, 414 F.2d 607 (10 Cir. 1969), and it is within the discretion of the Parole Board in each case to decide whether parole should be revoked or not.

Petitioner also contends that the charges of parole violation were negated automatically when the criminal charges in the District of Columbia were dropped. However, the abandonment of prosecution is not binding upon the parole board. Fox v. Sanford, 123 F.2d 334 (5 Cir. 1941).

Since petitioner admitted a violation, punishment was the only issue before the parole board. It is possible, nevertheless, to make a showing of prejudice on the question of disposition alone, *Obler, Hitchcock,* supra, although more difficult than when the fact of violation is contested, *Shelton, Cotner,* supra. When the question is one of proper disposition, a parolee may present evidence in mitigation not only by live testimony but also by letters from potential witnesses. *Boulet,* supra. Petitioner has not indicated what evidence and what witnesses he would have presented at a timely hearing which were unavailable to him because of the delay. Consequently he has not demonstrated prejudice. For the same reason, and also because he requested the transfer to Danbury, his attack on the place of the hearing must fail.

*Ineffective assistance of counsel.* Petitioner was represented at his revocation hearing by an experienced trial attorney appointed pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A(g). He claims, however, that his counsel was "thoroughly unfamiliar with the facts." Without more specific details of incompetence, this allegation is not one which could "shock the conscience of the Court." United States ex rel. Maselli v. Reincke, 383 F.2d 129 (2 Cir. 1967).

Accordingly, it is

Ordered, that the petition for a writ of habeas corpus be, and the same hereby is, denied.