**Ashley GADDY, State and Federal Prisoner, Appellee,**

v.

**George MICHAEL, in his official capacity as parole officer of the U. S. Board of Paroles, et al., and the U. S. Board of Paroles, Appellants.**

**No. 74–2054.**

United States Court of Appeals, Fourth Circuit.

Argued March 7, 1975.

Decided July 7, 1975.

---

Michael S. Scofield, Asst. U. S. Atty. (Keith S. Snyder, U. S. Atty., on brief), for appellants.

John E. Gehring, Walnut Cove [court-appointed], for appellee.

Before WINTER, CRAVEN and RUSSELL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

■ The issue in this appeal is whether the Parole Board is required to hold and dispose of a revocation proceeding *within two months* after the issuance of a parole violators warrant or may delay, under appropriate circumstances, the hearing on, and disposition of, such warrant until it has been executed.[1] The District Court held that the Board must dispose of the proceeding within this two months' period. We conclude, to the contrary, that the execution of the warrant may, in proper circumstances, be held in abeyance and that, when so held in abeyance, the revocation hearing on, and the disposition of the warrant may be delayed until after the warrant has been executed. We accordingly reverse.

The petitioner, who has filed this habeas proceeding, had been convicted of the federal crime of counterfeiting and had secured mandatory good-time release under § 4163, 18 U.S.C., "as if paroled," with approximately a year and a half remaining on his federal sentence. About five months after his release, he was arrested, convicted, sentenced and imprisoned on a state charge admittedly violative of his parole. The United States Board of Parole issued on April 10, 1973—only a few days after his conviction on the intervening charge—a parole violators warrant on the basis of his state conviction and a detainer was filed within a few days thereafter with the state authorities having custody of the petitioner. The petitioner was promptly advised that the detainer had been filed and that he might "submit to the Board any information [he] would like considered by the Board in disposing of the

1. Section 4206, 18 U.S.C.A. provides that an officer "shall execute such warrant by taking such prisoner and returning him to the custody of the Attorney General." In keeping with this statute, it has been held that, "[A] parole violators warrant is executed when its command is carried out—that is when the parolee is retaken and returned to federal custody pursuant to it." *Cook v. United States Attorney General* (5th Cir. 1974) 488 F.2d 667, 671, *cert. denied* 419 U.S. 846, 95 S.Ct. 81, 42 L.Ed.2d 75.

warrant. Upon receipt of such information, he was further advised that "[his] case [would] be reviewed and, if deemed appropriate, a representative of the Parole Board [would] personally interview [him] prior to any action being taken on the warrant."[2]

On May 28, 1974 the petitioner was released by the state authorities[3] to the custody of the United States pursuant to the parole violators warrant. On the same day, he was given a "probable cause" hearing and on August 30, 1974, the final hearing on the revocation was held, resulting in the revocation of his parole. In the meantime, the petitioner had, almost immediately after his release by the state authorities to federal custody, filed this habeas proceeding in the District Court for the purpose of voiding or cancelling the parole violators warrant because of the alleged denial of his due process right to a prompt hearing and disposition after the *issuance* of the warrant. The District Court granted partial relief. It held, relying primarily on *Morrissey v. Brewer* (1972) 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 that "sixty days after the *filing* of the parole violators warrant by the Parole Board is a reasonable time for the Parole Board to conduct its revocation hearing and render a decision"[4] and that, if it should not complete such proceedings within

such sixty day period, "the United States [would] be estopped from denying that a prompt hearing would have resulted in concurrent sentence of the federal parole violation sentence and the [state] sentence." It granted by way of relief the cancellation of the federal warrant, unless the Board of Parole gave the petitioner "a due process hearing on the question of the revocation of his federal parole within thirty days after the filing of this order." It proceeded further to hold that even if a hearing were granted within the thirty days, "the Parole Board [should] subtract from the potential of 423 days left in the original sentence, all of the days from June 10, 1973 (which was the final day for the completion of the revocation proceedings under the Court's sixty-day rule) until the decision of the Board * * * had been communicated to" the petitioner. The United States has appealed from this decision. As stated, we reverse.

 It is generally agreed and has long been recognized that the Board of Parole, after the issuance of its parole violators warrant, is obligated, as a matter of fundamental fairness, to execute with reasonable dispatch its parole violators warrant and, after the warrant has been executed, to accord to the parolee his due process rights to a hearing *within* a reasonable time.[5] But, the au-

---

**2.** This procedure was provided for under the Board's regulations as set forth in § 2.37(c), 28 C.F.R. In 1974 that regulation was revised and is now § 2.53(a), 28 C.F.R.

**3.** Subsequent to his original arrest and conviction, the petitioner had been convicted on two additional charges. Apparently the sentences on these new charges ran concurrently with his original sentence.

**4.** Italics added.

**5.** *United States v. Strada* (8th Cir. 1974) 503 F.2d 1081, 1084; *Small v. Britton* (10th Cir. 1974) 500 F.2d 299, 301; *McCowan v. Nelson* (9th Cir. 1970) 436 F.2d 758, 760; *Shelton v. United States Board of Parole* (1967) 128 U.S. App.D.C. 311, 388 F.2d 567 at 573. *See also, Bearden v. State of South Carolina, et al.* (4th Cir. 1971) 443 F.2d 1090, 1095.

§ 4207, 18 U.S.C. expressly provides that the parolee shall be given a hearing after he is "retaken upon a warrant." On principles of

fundamental fairness, this hearing was required to be two-tiered under the basic decision of Mr. Chief Justice [then Circuit Judge] Burger in *Hyser v. Reed* (1963) 115 U.S.App. D.C. 254, 318 F.2d 225, 245, *cert. denied* 375 U.S. 957, 84 S.Ct. 446, 11 L.Ed.2d 315, as subsequently incorporated in the Board's regulations. § 2.40, 28 C.F.R. The first hearing is designated as a "prima facie" hearing, which should be held near in time and location to the place where the alleged violation occurred and which is to determine whether there is probable cause to believe the parolee has violated his parole. The reason for this requirement as to time and place was the inconvenience to the parolee and the difficulty on his part in offering proof in refutation of a claim of violation if he were remote from the place where the alleged violation occurred. The reason would, however, not apply if the violation were admitted or rested on a conviction of an intervening criminal charge, *Jones v. Rivers* (4th Cir. 1964) 338 F.2d 862, 878; *Cotner v. United States*

thorities, while recognizing this obligation, have uniformly held that there is no inflexible time standard, such as the sixty-day standard mandated by the decision of the District Court, within which the Board must act, either in the execution of the warrant or, after its execution, in according the parolee his hearing rights.[6] What is a reasonable time and whether the Board in a particular case has acted within a reasonable time, either in connection with the execution of the warrant or in the subsequent grant of a hearing, just as the constitutional right to a speedy trial, may not be cast in absolute terms and "quantified into a specific number of days or months"[7] but depends upon all the circumstances of the particular case. *Shelton v. United States Board of Parole* (1967) 128 U.S. App.D.C. 311, 388 F.2d 567, 574; *Williams v. Pierpont* (D.C.Mo.1970) 315 F.Supp. 1311, 1313. Mere lapse of time or delay, particularly where the delay is in the execution of the warrant, without more, will no more violate the due process right of a parolee than will a delay of trial in the ordinary criminal case offend the "speedy trial" provision of the Constitution, *Cf., Barker v. Wingo, supra*. To entitle the parolee to relief, the delay, taking into consideration all the circumstances, must be unreasonable; it must also be prejudicial. A decisive issue in these cases is prejudice. As a matter of fact, a leading authority has characterized prejudice as "the focal point of the inquiry." *Shelton v. United States Board of Parole, supra,* at 574; *Savage v. U. S. Parole Board* (6th Cir. 1970) 422 F.2d 1248, 1250. To repeat, delay "is but one element, albeit a forceful one, to be considered. Timely objection to the delay, unavailability of witnesses, lost sources of mitigating evidence, the violator's own conduct as a contributing cause of the delay, and the Parole Board's reasons for the delay are factors which also must weigh in the balance" when determining whether there has been unreasonable delay and whether there has been prejudice. *United States v. Kenton* (D.C.Conn.1967) 262 F.Supp. 205, 209; *Agresti v. Parker* (D.C.Pa.1968) 285 F.Supp. 893, 897; *Shelton v. United States, supra,* at 574.

■ While, as we have already indicated, the warrant must be executed with reasonable dispatch and an extremely "long delay between the issuance of an arrest warrant and its execution may be unreasonable and a deprivation of due process * * *,"[8] the Courts have established a number of sound reasons which may and will justify

---

(10th Cir. 1969) 409 F.2d 853, 856; *Starnes v. Markley* (7th Cir. 1965) 343 F.2d 535, 537, cert. denied 382 U.S. 908, 86 S.Ct. 246, 15 L.Ed.2d 160, and the "prima facie" hearing could be held elsewhere in these cases, usually at the prison itself. The final hearing, which is not subject to as stringent time requirements as the prima facie hearing, it being permissible to have "a significant time lapse between arrest and a final revocation decision," see, Fisher, *Parole and Probation Revocation Procedures after Morrissey and Gagnon,* 65 J. of Crim.L. & Criminology, 46, 49 (1974), consists of two parts: 1. A factual determination whether the parolee had actually violated his parole; and 2. If he had, a discretionary or judgment determination whether the violator may, despite the violation, still be regarded as a good parole risk, on which issue the violator is entitled to present mitigating circumstances. *Preston v. Piggman* (6th Cir. 1974) 496 F.2d 270, 274.

6. *Cf., Barker v. Wingo* (1972) 407 U.S. 514, 523, 92 S.Ct. 2182, 2188, 33 L.Ed.2d 101: "We find no constitutional basis for holding that the speedy trial right can be quantified into a specific number of days or months."

7. *Barker v. Wingo, supra* (407 U.S. at 523, 92 S.Ct. at 2188).

8. *United States v. Strada, supra* (503 F.2d at 1084).

*Shelton* instanced two cases of such extreme delay as to create an irrebuttable presumption of prejudice (388 F.2d at 574, n. 10). In one of these the delay between issuance and execution was eleven years. *United States v. Gernie* (D.C.N.Y.1964) 228 F.Supp. 329, 338. In the other, the delay was 14 years. *United States v. Ragen* (D.C.Ill.1945) 59 F.Supp. 374.

In *Simon v. Moseley* (10th Cir. 1971) 452 F.2d 306, 309, a similar result was reached. There, a delay of four years from issuance to completion of an intervening sentence was found reasonable but a further delay of four years after the intervening sentence had been concluded in the execution of the warrant was found to be unreasonable and prejudicial.

delay in executing the parole violators warrant. These reasons are founded primarily on fairness to the parolee—but they would be unavailing under the absolute and inflexible rule promulgated by the District Court in this case. Thus, it has been the *uniform rule* that the execution of the warrant may be held in abeyance awaiting the outcome of pending criminal charges against the parolee, where, as here, such charges are the basis for the warrant and any delay thereby occasioned will be deemed reasonable.[9] The rationale for this was well expressed in *Burdette v. Nock* (6th Cir. 1973) 480 F.2d 1010, 1012:

> " * * * In fairness to the defendant he should first be afforded the opportunity to have his case tried before a jury in the state court. The Federal Parole Board also ought not. be required to determine the issues of the state charge prior to the trial in the state court. * * * "

The same reasoning was stated by the Court in *Shelton v. United States, supra,* (388 F.2d at 573):

> " * * * Since there is no need to hold a revocation hearing at all in such cases—the violation being established by the criminal conviction—there can be no prejudice to the parolee in regard to determining the fact of violation by awaiting the outcome of criminal proceedings, and there may be an advantage, as appellees suggest, in leaving 'the determination of guilt or innocence * * * to the courts [rather] than to an informal Board hearing.' "

A delay of 18 months between issuance and execution of the warrant in *Burdette,* almost 3 years in *Moore v. Smith* (7th Cir. 1969) 412 F.2d 720 and 2 years in *Boswell v. United States* (1967) 128 U.S.App.D.C. 311, 388 F.2d 567, 572, were found reasonable on this basis.[10]

Equally settled is the rule that "where a warrant has been properly issued within the maximum term of the sentence, the execution of that warrant may be held in abeyance for the service of an intervening sentence" and again such delay is reasonable. *Stockton v. Massey* (4th Cir. 1929) 34 F.2d 96, 97, cert. denied, 281 U.S. 723, 50 S.Ct. 239, 74 L.Ed. 1141 (1930); *United States ex rel. Blassingame v. Gengler* (2d Cir. 1974) 502 F.2d 1388; *Small v. Britton, supra* (500 F.2d at 301); *Trimmings v. Henderson* (5th Cir. 1974) 498 F.2d 86, 87; *Cook v. United States Attorney General, supra* (488 F.2d at 671); *Vladovic v. Parker* (9th Cir. 1972) 455 F.2d 495, 496; *Barr v. Parker* (9th Cir. 1971) 453 F.2d 865, 867; *Cox v. Feldkamp* (5th Cir.

---

9. Some of the authorities make a distinction between cases where a prosecution is the basis for the warrant and where it is not. Thus, in *Shelton v. United States Board of Parole, supra* (388 F.2d at 573–4), the Court said:

> " * * * Where there is confinement for a charge that is not alleged as a ground for revocation of parole it is not *per se* reasonable to defer determination of whether there has been a violation of parole pending the completion of the unrelated criminal proceedings. If the Board intended *to pursue* the charge that the parole board's order had been violated by failure to report, there is at least an issue whether it was reasonable to delay this determination for two and a half years merely because the parolee was in confinement on an unrelated Dyer Act charge."

10. In some cases, the basis for the issuance of the warrant is the criminal prosecution and what is described as a non-legal circumstance.

The Board will often delay the execution of the warrant on account of the pendency of the prosecution in line with its customary practice. This is accepted as a basis for holding the hearing in abeyance. *See Skeeter v. McCune* (D.C.Va.1974) 382 F.Supp. 250; and *Agresti v. Parker, supra* (285 F.Supp. at 893). In so doing the Board is taking some risk, since, as we have seen, it can be faced with a different problem where the fact of violation rests on a criminal prosecution and when it rests on a "non-legal" circumstance. In both of the cited cases, the Board's expectation was apparently not satisfied: the criminal prosecution in both was resolved in favor of the parolee. The Court in both cases proceeded to find that, when the propriety of the delay in executing the warrant no longer could be founded on the pendency of a criminal prosecution or a criminal conviction but had to rest on the non-legal ground, the issue of prejudice in defense of the non-legal claim would take into consideration the entire period of delay.

1971) 438 F.2d 1, 3; *Moore v. Smith, supra* (412 F.2d at 724).[11] Delays of 3 to 4 years have been approved in these situations.[12] This exception, too, is supported by consideration of fairness to the parolee. To require a hearing at the time of the parolee's conviction on the intervening charge would "frequently operate to the detriment of the prisoner by forcing the Board to exercise its discretion at a point in time when the prisoner's record would argue least favorably for lenient treatment." *Noorlander v. United States Attorney General, supra* (465 F.2d at 1110). By delaying the hearing, however, the Board gives the parolee the opportunity, after notice, so to conduct his behavior during service of the intervening sentence as to establish a basis for the withdrawal of the warrant at the conclusion of his intervening sentence.[13] We would emphasize, too, as did the Court in *Cook, supra,* at pp. 671–2, "that where the parole revocation hearing is deferred pending service of the intervening sentence, the parolee is not left without notice of the issuance of the violator's parole warrant nor *review of the propriety of its continued existence as a detainer."* (Italics added) The parolee, as was the case here, is extended the right to apply for "a dispositional interview at the federal prison * * * at which time the continued propriety of the detainer may be challenged" under the terms of § 2.53(a), 28 C.F.R. and Parole Board Directive No. 5, 32 F.R. 15014, October 31, 1967, *supra* at p. 3.

Unlike the District Court, we find in *Morrissey* no suggestion or indication that any of these well-developed rules governing the handling of federal parole hearings—rules that had largely been developed under judicial auspices [14] —were violative of a parolee's constitutional rights. *Morrissey* concerned state, not federal parolees, and a state parole system under which a parolee might have his parole revoked without being granted any hearing whatsoever, and without being given any opportunity to know the basis on which his parole was being revoked or to challenge the facts on which a violation of his parole might be claimed. 408 U.S. 492, 92 S.Ct. 2593 (Douglas, J., dissenting). Neither parolee in *Morrissey* had been convicted of a

11. In fact, this has been the long-time practice of the Board and has received the approval consistently of the courts. Thus, in *Woykovsky v. Chappell* (1964) 119 U.S.App.D.C. 8, 336 F.2d 927, 928, n. 1, *cert. denied* 380 U.S. 916, 85 S.Ct. 903, 13 L.Ed.2d 801, the Court said:

"Generally the commission of a criminal offense while on parole or on a conditional release is a ground for the revocation of the release. If the parole board decides to institute revocation proceedings, it issues a parole violator warrant. However, customarily, these are not served upon the releasee immediately, but are instead held as a detainer against the prisoner while he is serving the sentence on the new conviction."

12. See, *Jefferson v. Willingham* (10th Cir. 1966) 366 F.2d 353, 354, *cert. denied* 385 U.S. 1018, 87 S.Ct. 744, 17 L.Ed.2d 554; *Noorlander v. United States Attorney General* (8th Cir. 1972) 465 F.2d 1106 (over 14 months); *Cook v. United States Attorney General, supra* (approximately 5 years' delay).

13. When the parole violation rests on an intervening conviction, the importance of an early hearing after execution of the warrant loses some of its significance. *See Jones v. Rivers, supra* (338 F.2d at 862) (including concurring opinions of Judges Sobeloff and Haynsworth). This was emphasized in *Morrissey v. Brewer, supra* (408 U.S. at 490, 92 S.Ct. at 2605) where the Court said:

"* * * Obviously a parolee cannot relitigate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime. * * *

* * * * * *

"* * * If it is determined that petitioners admitted parole violations to the Parole Board, as respondents contend, and if those violations are found to be reasonable grounds for revoking parole under state standards, that would end the matter."

This follows substantially the language in *Hyser v. Reed, supra* (318 F.2d at 246) that:

"* * * Those who have not denied the charged violation of parole or any whose parole was revoked because of a criminal conviction would not now be benefited by a hearing which is designed specifically to make a record only in cases where the fact of violation is controverted."

14. *See Shelton v. United States Board of Parole, supra* (388 F.2d at 578–9) and *Hyser v. Reed, supra* (318 F.2d at 245).

criminal offense violative of his parole. The grounds for revocation were largely the same in both cases: Such as failing to report change of address and acquiring a driver's license under an assumed name. No new criminal charges had been filed or were pending against the parolees. The question thus posed by the appeal in *Morrissey* was whether a state might, consonant with the due process clause, deny a parolee any "procedural safeguards [whatsoever] *with regard to the loss of liberty* that accompanied an *arrest* for parole violations" and, if it might not, what were the basic requirements for such procedures.[15] This was a question that had long since been answered in the federal area and those answers found expression both in the judicial decisions and in the regulations promulgated by the federal Board of Parole, largely under direction from the Courts. In answer to that question the Court said a state must provide "an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior."[16] It added that, if the parolee admitted the violation or "the revocation is based on conviction of another crime, * * * that would end the matter" of a violation of parole, since "[O]bviously" in the case of a conviction as a basis for violation, "a parolee cannot relitigate issues determined against him in other forums * * *."[17] It did state that a revocation hearing should be "tendered within a reasonable time after the parolee is taken into custody" and "[A] lapse of two months, * * * would not appear unreasonable,"[18] a statement which was not at variance with the federal decisions dealing with the operation of the federal parole system. This statement represented simply the resolution of a point of difference which divided the majority opinion and the dissenting opinion of Mr. Justice Douglas. Under the majority opinion the parolee could be arrested or "taken into custody" prior to a hearing on the claimed violation; Mr. Justice Douglas, on the other hand, would hold that, "[I]f a violation of a condition of parole is involved, *rather than the commission of a new offense,* there should not be an arrest of the parolee and his return to the prison" until he had been accorded a hearing.[19] Both opinions were dealing with the situation where the parole violators warrant, not another criminal charge or conviction, was the sole cause for the arrest and the taking into custody, and that is plain from the italicized language from Mr. Justice Douglas' opinion and it was to this situation and to it alone that the Court was speaking.[20] Neither the majority opinion nor that of Mr. Justice Douglas was intended to apply to the situation where the parolee was already "in custody" on account of the "commission of a new offense," nor was the Court fixing any "quantified" time standard within which the Board must conclude its proceedings, as the District Court concluded.[21] In fact, the

---

15. *United States v. Strada, supra,* 503 F.2d at 1084 (first emphasis added; second emphasis in opinion) and 408 U.S. at 484, 92 S.Ct. 2593.

16. 408 U.S. at 484, 92 S.Ct. at 2602.

17. 408 U.S. at 490, 92 S.Ct. at 2605.

18. 408 U.S. at 488, 92 S.Ct. at 2604.

19. 408 U.S. at 497, 92 S.Ct. at 2608 (Italics added). This, also, is a point that spills over into the issue whether a parolee, arrested for a non-legal cause under a parole violators warrant, is entitled to bail. *See* Note, *Post-Conviction Criminal Rights: Parole and Probation Revocation and Bail,* 8 *Creighton L.Rev.* 682, 686–8 (1975). The right is generally denied. *See Marchand v. Director, U. S. Probation Office* (1st Cir.) 421 F.2d 331.

20. As the Court said in *Shelton* (at 574, n. 11) "[W]holly different problems are raised where the violator is in custody solely pursuant to a warrant and *awaiting a hearing on the fact of violation*" and where the parolee is in prison on an intervening charge. In the former instance, where as a result of the execution of the warrant the parolee has lost his liberty, his right to a prompt hearing is far more impelling obviously than when he is already in prison.

21. Strictly followed, the construction of *Morrissey* adopted by the District Court, with its inflexible "two months" rule would in the vast majority of cases prevent the Board from delaying the execution of its warrant until the pending prosecution, on which the warrant was issued had been concluded and would

Court in *Morrissey* was careful to emphasize that, hampered as it was by an "absence of an adequate record," it was not attempting to create a straitjacket for the treatment of parole violations and had "no thought to create an inflexible structure for parole revocation procedures" in state parole proceedings.[22] Even more so is its opinion not to be taken as an overturning of all the procedures that had been developed in the federal decisions for proceedings in federal parole proceedings such as here. In fact, the Court seems to be drawing on those procedures in its determination of what is fundamental in state proceedings.

We realize that *Sutherland v. District of Columbia Board of Parole* (D.C.D.C. 1973) 366 F.Supp. 270, 272, and *Fitzgerald v. Sigler* (D.C.D.C.1974) 372 F.Supp. 889, 898, support to some extent the conclusion reached by the District Court in this case. It is interesting, though, that, while *Sutherland* concludes that the Court in *Morrissey* had in effect overruled *Shelton*, even though the Supreme Court at no point so indicates,[23] that decision did not find in *Morrissey* any "two months" rule as did the District Court. On the contrary, it stated a "three months" rule finding warrant therefor in a group of cases listed in a note in *Marchand v. Director, U. S. Probation Office* (1st Cir. 1970) 421 F.2d 331, 335, n. 5, no one of which involved a parolee imprisoned after conviction on an intervening charge. Like the Court in *Small v. Britton, supra* (500 F.2d at 302), we find these decisions unconvincing, as well as the reasoning of the District Court in this case.

We accordingly conclude that the Board was perfectly justified in holding in abeyance and delaying execution of its warrant in this case until the petitioner had been released by State authorities after service of his sentence for the intervening charge, which was the basis for the warrant.[24] Even were we to find that the delay had been unreasonable, however, the petitioner would still be entitled to relief only if he could establish prejudice.[25]

The petitioner in this case was manifestly not prejudiced by the delay in the factual establishment of his violation of parole. He certainly was not prejudiced in his right to a prima facie hearing. The District Court conceded that his conviction in state court was conclusive on that right. The District Court, however, found prejudice in delay of a final hearing on three grounds, no one of which we find sound. First, it found that "[D]elay fades and perishes evidence of mitigation" and "[W]itnesses may die or forget." All of this is true but these are reasons that have particular relevancy where the fact of violation is in dispute. As *Morrissey*

---

force the defendant to make his defense, including the giving of his testimony, prior to his actual trial, thereby losing the right to be silent at trial. Such an unfair result gives cogent support to the rule that the execution of the warrant may in such a case be held in abeyance, even if it results in a delay in the revocation hearing for many months, or perhaps years in some instances.

It would seem, also, unlikely that the Court was establishing two different and inconsistent rules in its decisions in *Morrissey* and *Wingo*. In both cases, the individual is deprived of his liberty on a charge that has not been proved. The right to a prompt hearing is equally cogent in both cases. A rule that requires a hearing in the one case and a trial in the other within a reasonable but not "quantified" time, taking into consideration all the circumstances, it is submitted is the proper one and is supported by authority.

**22.** 408 U.S. at 490, 92 S.Ct. at 2604.

**23.** In *Skeeter v. McCune, supra*, Judge Merhige did not conclude that *Morrissey* overruled *Shelton*. To the contrary, he found *Hyser* and *Shelton* entirely consistent with *Morrissey* and in fact rested his decision on *Shelton*.

**24.** *See Trimmings v. Henderson, supra; Cook. v. United States Attorney General, supra; Britton v. Small, supra.*

**25.** *Shelton v. United States Board of Parole, supra* (388 F.2d at 274). To the same effect *United States v. Kenton* (2d Cir. 1961) 287 F.2d 534, 536, cert. denied 368 U.S. 846, 82 S.Ct. 75, 7 L.Ed.2d 44; *Savage v. Parole Board, supra* (422 F.2d at 1250); *Agresti v. Parker, supra* (285 F.Supp. at 896); *Skeeter v. McCune, supra* (382 F.Supp. at 252).

itself points out, they are largely insignificant where the fact of violation is conclusively established by the criminal conviction itself. Moreover, if the petitioner seeks to claim prejudice on this ground, he is obligated to show "what evidence and what witnesses he would have presented at a timely hearing which were unavailable to him because of the delay" and, absent such a showing, he may not claim prejudice in this particular. *Jenkins v. United States* (D.C.Conn.1972) 337 F.Supp. 1368, 1371; *Skeeter v. McCune, supra* (382 F.Supp. at 252). The petitioner has made no such showing. Next, the District Court found that by reason of the delay the petitioner lost the opportunity for having prompt consideration of his right to concurrency of state and federal sentence. The authorities, however, are uniform on the point that the right to concurrency of sentence is a matter exclusively in the province of the Board and delay on the part of the Board in executing the warrant will not support a .. claim of prejudice consisting of a loss of opportunity for concurrency of sentence.[26] Finally, the District Court found prejudice because the delay may have caused the parolee-prisoner "to lose prison privileges," "rehabilitative opportunity" and possible loss of "gain time." When the warrant rests on a criminal conviction, such a claim has, however, not been found to create the type of prejudice which will justify the invalidation of the warrant. *See Noorlander v. United States Attorney General, supra* (465 F.2d at 1109).

■ There is another and a conclusive answer to all the hypothetical bases for a finding of prejudice on any of the grounds stated. *Almost simultaneous with the issuance of the warrant,* the petitioner was advised, as required by § 2.53(a), 28 C.F.R., that he could offer any evidence that would support a withdrawal or other disposition of the warrant. That extended to him the opportunity for a hearing. He made no attempt to avail himself of this administrative remedy, thus open to him almost from the day the warrant was issued.[27] No doubt the petitioner failed to exercise this right because he knew that his conviction made the possibility of immediate parole, or concurrency of sentence, unlikely in withdrawal of the detainer. But whatever the reason for his failure to avail himself of this right, though, he could not "sleep on his administrative remedies for fear that he has no case and then claim prejudice by reason of the passage of time."[28]

To summarize, we conclude that the delay by the Board in according the petitioner a hearing on his parole violators warrant until he had served his intervening sentence, which was the basis of the warrant, was not unreasonable; and, even if unreasonable, the petitioner suffered no prejudice thereby and was entitled to no relief on account thereof. The order of the District Court is accordingly reversed, with directions to dismiss the petition.

*Reversed.*

---

26. *Zerbst v. Kidwell* (1938) 304 U.S. 359, 362, 58 S.Ct. 872, 82 L.Ed. 1399; *Simon v. Moseley* (10th Cir. 1971) 452 F.2d 306, 309; *Tanner v. Moseley* (8th Cir. 1971) 441 F.2d 122, 124; *Adams v. United States* (5th Cir. 1970) 432 F.2d 62, 63; *Woykovsky v. Chappell, supra* (336 F.2d at 928; *Sadler v. United States* (10th Cir. 1963) 313 F.2d 106, 107. *See Nash v. Moseley* (10th Cir. 1970) 433 F.2d 923, 924; *Moore v. Smith* (7th Cir. 1969) 412 F.2d 720, 724; *Jefferson v. Willingham, supra* (366 F.2d at 354).

27. Delay in the hearing and disposition of parole revocation proceedings is another aspect of the general problem of denial of a speedy

trial considered in *Smith v. Hooey* (1969) 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607, and *Barker v. Wingo* (1972) 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. Both recognize that anxiety to a defendant awaiting trial is a factor which might constitute prejudice. Prejudice of this type was not found by the District Court in the instant case. Manifestly, such prejudice could not have been significant in the instant case when petitioner failed to pursue the remedy which would have obviated it.

28. *Moore v. Smith, supra* (412 F.2d at 724); *Cook v. United States Attorney General, supra* (488 F.2d at 673).